[No. 71353-7. En Banc.]
Argued February 14, 2002. Decided August 29, 2002.

*In the Matter of the Personal Restraint of* DARRIN RAND
HUTCHINSON, SR., *Petitioner.*

198

*James E. Lobsenz* (of *Carney, Badley, Smith & Spellman*), for petitioner.

*Christine O. Gregoire, Attorney General,* and *Paul D. Weisser, Senior Counsel,* and *Diana M. Sheythe, Assistant;* and *Gregory M. Banks, Prosecuting Attorney for Island County,* for respondent.

OWENS, J. — Darrin Hutchinson, sentenced in 1989 to life in prison without possibility of parole for the murder of two law enforcement officers, contends that this court violated his due process rights by issuing contradictory decisions. In the alternative, Hutchinson claims that he received ineffective assistance of counsel. We disagree and therefore affirm the Court of Appeals decision dismissing Hutchinson's personal restraint petition.

## FACTS

On November 14, 1987, Hutchinson shot and killed two Island County Deputy Sheriffs, William Heffernan and John Saxerud, at the Island County jail complex, where the deputies were preparing to administer a Breathalyzer test following Hutchinson's arrest for a driving violation. After shooting the two officers, Hutchinson took a key from Deputy Saxerud's pocket, stole a patrol car, drove to his brother's house, and on his brother's advice abandoned the car in a ravine before walking to his parents' house, where he was arrested a short time later. In a taped interview, Hutchinson confessed to shooting the two deputies.

Prior to trial, Hutchinson sought this court's discretionary review of a trial court order directing him to submit to a psychiatric examination by the State's expert, an examination prompted by Hutchinson's disclosure that he would possibly rely at trial on a diminished capacity defense. On September 26, 1988, this court issued an order affirming the discovery order and stating that an explanatory opinion

would follow. On January 11, 1989, the State's expert "attempted to examine the Defendant, but began by stating, 'whatever you say does not have Fifth Amendment privileges. . . .' " *State v. Hutchinson*, 135 Wn.2d 863, 872, 959 P.2d 1061 (1998), *cert. denied*, 525 U.S. 1157 (1999) (*Hutchinson* III) (quoting Verbatim Report of Proceedings (Jan. 11, 1989) at 2). Through counsel, Hutchinson declined to answer any questions asked by the State's expert at the court-ordered examination. In response, the trial court sanctioned Hutchinson by excluding three of his mental health experts from testifying regarding his diminished capacity defense.[1] On January 13, 1989, this court issued its opinion affirming the trial court's order requiring the psychiatric examination. *State v. Hutchinson*, 111 Wn.2d 872, 766 P.2d 447 (1989) (*Hutchinson* I).

In light of this court's explanatory opinion (*Hutchinson* I), Hutchinson asked the trial court to reconsider its orders requiring his participation in the examination and imposing the sanction of precluding expert witness testimony. Again rejecting Hutchinson's position that his compulsory participation in the psychiatric examination would violate his Fifth Amendment privilege against self-incrimination, the trial court explained that its in camera review would ensure that any incriminating statements made during the examination would be suppressed at trial. The trial court offered to rescind its sanction if Hutchinson agreed within three days to submit to the examination, but Hutchinson declined the opportunity and thereafter unsuccessfully moved the trial court for reconsideration three more times. Hutchinson did not request a stay to seek appellate review of any of the trial court's denials of his motions for reconsideration.

On June 30, 1989, a jury found Hutchinson guilty of two counts of aggravated first degree murder, and on July 17,

---

[1] The court excluded "the testimony of Dr. Hedrick, Dr. Scott, and Dr. Halpern, except with respect to Dr. Halpern's testimony regarding the effects of alcohol on a person's capacity to form the requisite mental intent and his testimony related to alcohol intoxication." Report of Proceedings, App. H.

1989, he was sentenced to life imprisonment without possibility of release or parole. Hutchinson appealed his conviction, and in 1997 the Court of Appeals reversed, finding that the trial court had erred in its jury instructions and in its preclusion of testimony by Hutchinson's expert witnesses. *State v. Hutchinson*, 85 Wn. App. 726, 938 P.2d 336 (1997) (*Hutchinson* II). But in 1998 this court reversed the Court of Appeals and reinstated Hutchinson's conviction, and the United States Supreme Court subsequently denied his petition for a writ of certiorari. *Hutchinson* III.

In February 2000, Hutchinson filed a personal restraint petition in this court, seeking relief from confinement. We transferred the petition to the Court of Appeals, and on June 4, 2001, that court denied Hutchinson's petition in an unpublished decision. *In re Pers. Restraint of Hutchinson*, No. 46728-0-I, 2001 Wash. App. LEXIS 1175, 2001 WL 599900 (Wash. Ct. App. June 4, 2001) (*Hutchinson* IV). On December 4, 2001, we granted Hutchinson's motion for discretionary review of the dismissal of his personal restraint petition.

## ISSUES

(1) In light of statements in this court's September 1988 order and its 1989 explanatory opinion, was Hutchinson deprived of due process when the trial court imposed discovery sanctions for his refusal to submit to the State's psychiatric examination?

(2) In the alternative, did Hutchinson prove that his trial counsel's representation was deficient and that her errors compromised his Sixth Amendment right to a fair trial?

## ANALYSIS

■ *Standard of Review*. In this personal restraint petition, Hutchinson claims a violation of his constitutional rights. To obtain relief through his petition, Hutchinson must show that a constitutional error was made, and he

"must prove that the constitutional errors worked to his actual and substantial prejudice." *In re Pers. Restraint of Lile*, 100 Wn.2d 224, 225, 668 P.2d 581 (1983); *see In re Pers. Restraint of St. Pierre*, 118 Wn.2d 321, 328, 823 P.2d 492 (1992) (observing that defendant must show such prejudice by a preponderance of the evidence).

*Due Process Claim.* Hutchinson asserts that this court issued contradictory directives regarding his right to exercise his Fifth Amendment privilege against self-incrimination and that his reliance on one of the directives resulted in the type of due process violation that the United States Supreme Court delineated in *Raley v. Ohio*, 360 U.S. 423, 79 S. Ct. 1257, 3 L. Ed. 2d 1344 (1959). We reject Hutchinson's analysis.

In our order of September 26, 1988, we stated as follows:

> "The trial court's May 25, 1988 order requiring that Mr. Hutchinson submit to an examination by a State's expert is affirmed, but neither the interposing of a diminished capacity defense by Mr. Hutchinson nor his submission to this examination shall be *deemed to waive* his constitutional right against self-incrimination[.]"

*Hutchinson* I, 111 Wn.2d at 874 (emphasis added). This sentence unequivocally affirmed the trial court's order requiring Hutchinson to submit to a psychiatric examination by the State's expert, and it further provided that Hutchinson's "submission to this examination" would not be "deemed to waive"—that is, regarded as a waiver of—his Fifth Amendment privilege against self-incrimination. This court's order thus stated that Hutchinson was required, as the trial court had ordered, to submit to the examination, but that submission to the examination could not be construed against him as a waiver of his privilege against self-incrimination. Based on this court's order, the trial court ordered Hutchinson to participate in the examination and, when Hutchinson failed to do so, imposed the discovery sanction of precluding Hutchinson's psychological experts from testifying to anything beyond the effects of

alcohol on his capacity to form the requisite intent. *See supra* n.1.

 Following the trial court's imposition of the discovery sanction, this court issued its opinion explaining its September 1988 order. *Hutchinson I.* There, we endorsed the analysis in *State v. Craney*, 347 N.W.2d 668, 673 (Iowa), *cert. denied*, 469 U.S. 884 (1984), and concluded that the State's expert would not be permitted to support his testimony with incriminating observations or with incriminating statements made by Hutchinson. *Hutchinson I*, 111 Wn.2d at 883. Critical to the issue now before us are the final two paragraphs of *Hutchinson I:*

> The defendant contends that the trial court's order is premature inasmuch as he has not actually asserted diminished capacity at trial or presented any evidence of his mental condition. However, having indicated that he might rely upon diminished capacity as a defense, defendant has opened the door for discovery of his mental condition and for psychiatric examination. *While the defendant has a right to the presence of counsel during such an examination, counsel may not inhibit the examination.* The defendant, upon such an examination, may refuse to answer any question if he believes his answer might tend to incriminate him or lead to evidence of an incriminating nature. RCW 10.77.020(4).

> *We hold the defendant must submit to an examination as to mental condition and capacity by such psychiatrists as the prosecution shall choose.* The expert witnesses who have examined the defendant for the defense cannot be required to prepare reports for the benefit of the prosecution. However, defense counsel can be required to fully disclose in writing the testimony that such expert witnesses can be expected to relate at trial. Whether defense counsel has fairly and fully set forth a recapitulation of such expected testimony is for the trial court to say. *Defense counsel are entitled to attend any examination of the defendant by the prosecution's expert witnesses, but may not interfere with or participate in the examination. The trial court is responsible for the protection of the constitutional rights of the defendant against self-incrimination by in camera consideration of any written report and, during the course of the trial, by exclusion of testimony pertaining to guilt.*

*Id.* at 884-85 (emphasis added). Read in its entirety, *Hutchinson* I did not say that Hutchinson could refuse to participate in the State expert's psychiatric examination. To the contrary, it explicitly *held* that Hutchinson must submit to the examination, that his counsel was entitled to attend but not interfere with or participate in the examination, and that the trial court would protect Hutchinson's constitutional rights by in camera review and exclusion of incriminating testimony.

This court's opinion in *Hutchinson* I simply will not support Hutchinson's claim under the *Raley* doctrine. In *Raley*, a state commission clearly advised witnesses that they could assert their Fifth Amendment privilege when asked to testify before the commission. Because a state immunity law actually deprived the witnesses of that privilege, the witnesses were subsequently prosecuted for contempt. The United States Supreme Court concluded that there had been "active misleading" on the part of the state commission and not merely the issuance of "commands [that were] simply vague or even contradictory." 360 U.S. at 438. In reversing the convictions of the witnesses, the Court sought to correct and prevent "the most indefensible sort of entrapment by the State—convicting a citizen for exercising a privilege which the State clearly had told him was available to him." *Id.*

Hutchinson mistakenly equates the commission's assurances in *Raley* with the directives in this court's September 1988 order and *Hutchinson* I that Hutchinson "submit to an examination" by the State's psychiatric expert. *Hutchinson* I, 111 Wn.2d at 874, 884. Hutchinson rests his *Raley* claim on the potentially contradictory statement in *Hutchinson* I that Hutchinson, "upon such an examination, may refuse to answer any question if he believes his answer might tend to incriminate him or lead to evidence of an incriminating nature." *Id.* at 884 (citing RCW 10.77.020(4)). While that statement has since been clarified,[2] its inclusion in

---

[2] "In *State v. Pawlyk*, 115 Wn.2d 457, 467, 800 P.2d 338 (1990), we clarified our prior holding and stated the *Hutchinson* I

"reference to RCW 10.77.020(4) ... should not be read as implying that the statutory privilege against self-incrimination applies to any and all psychiatric

*Hutchinson* I did not negate this court's affirmance of the trial court's order that Hutchinson participate in an examination by the State's psychiatric expert. Hutchinson would have a persuasive argument under *Raley* only if the trial court and this court had plainly told him that he was not required to submit to the examination and had then imposed and upheld a discovery sanction for his failure to submit to that examination. But that did not happen here. The trial court correctly interpreted *Hutchinson* I and explained that the court's in camera review would ensure that any incriminating statements made during the examination would be suppressed at trial. The trial court set forth its straightforward interpretation of *Hutchinson* I and offered to rescind the discovery sanction upon Hutchinson's compliance with the order, but Hutchinson rejected the court's interpretation and sought no review of the denial of his multiple motions for reconsideration.[3] The sanction was imposed because Hutchinson violated the trial court's unwavering order that he submit to the examination and permit in camera redaction of incriminatory statements. In

---

evaluations of a Defendant regardless of the circumstances; any such reading plainly would not comport with the express terms of RCW 10.77.

" . . . The statutory privilege against self-incrimination is strictly construed and applies only to psychiatric evaluations of a defendant conducted under RCW 10.77, not in diminished capacity cases.

"We take this opportunity to clarify further our holding in *Hutchinson* I, which requires a defendant who has claimed diminished capacity . . . to submit to an examination by the State's expert. The trial court must then determine the scope of the expert's testimony at trial, allowing opinions and observations which were not gleaned from incriminating statements. A statement should not be ruled incriminating merely because it tends to show the defendant was capable of forming the crime's requisite mental state. On the other hand, an expert should not be allowed to testify to a defendant's incriminating statements, e.g., confessions or admissions that he or she committed the crime charged. . . . [T]he trial court can meaningfully address these issues only after a defendant has fully participated in the examination." *Hutchinson* III, 135 Wn.2d at 878-79.

[3] Contending that Hutchinson deserves a new trial, the dissent states that "Hutchinson should be clearly instructed that he must fully participate in the examination . . . and . . . should be assured that his Fifth Amendment rights will be protected by in camera review." Dissent at 213. In light of the procedural facts of this case, the dissent seeks what the trial court repeatedly gave Hutchinson in 1989.

sum, Hutchinson cannot reasonably claim that either the trial court or this court entrapped him or actively misled him into believing that he was at liberty to refuse to submit to the State's psychiatric examination.

Because we find no violation of the *Raley* due process doctrine, we do not reach the question of whether the alleged error "worked to [Hutchinson's] actual and substantial prejudice." *Lile*, 100 Wn.2d at 225.

*Ineffective Assistance of Counsel.* In the alternative, Hutchinson argues that he was denied his Sixth Amendment right to effective assistance of counsel when his attorney advised him that he could assert his Fifth Amendment privilege against self-incrimination and thus refuse to answer any questions in the court-ordered psychiatric examination. Hutchinson contends that his attorney's advice resulted in the trial court's exclusion of the testimony of Hutchinson's experts on diminished capacity.

To prevail on a claim of ineffective assistance of counsel, a defendant must show that "(1) defense counsel's representation was deficient, *i.e.*, it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, *i.e.*, there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995) (citing *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987) (applying the two-prong test in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984))). In weighing the two prongs of deficient performance and prejudice, the court must begin with "a strong presumption counsel's representation was effective" and must base its determination on the record below. *Id.* at 335. The defendant alleging ineffective assistance of counsel "must show in the record the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel." *Id.* at 336. If the defendant's claim rests on "evidence or facts not in the existing

trial record," filing a personal restraint petition is the appropriate step. *Id.* at 335.

Hutchinson has not met his burden of showing the absence of strategic, tactical thinking on the part of his trial counsel. Hutchinson's attorney sought to deprive the State of any significant evidence rebutting her client's diminished capacity defense. By seizing on a potential loophole in this court's order and explanatory opinion, she attempted to convince the trial court that Hutchinson had a Fifth Amendment right to remain silent throughout the State's psychiatric examination. Her tactic was to modify her initial position in subsequent motions for reconsideration: in her second and third motions, she stated that Hutchinson would provide nontestimonial responses to the State expert's tests, and in her fourth motion, filed at the close of the State's case, she indicated that Hutchinson would submit to the examination and answer nonincriminating questions. Although the trial court persisted in denying the motions for reconsideration, defense counsel may have reasonably concluded that her client's participation in the court-ordered psychiatric examination would have yielded rebuttal testimony so damaging that it would have eclipsed any gains made by Hutchinson's own mental health experts. The defense, after all, was allowed to present one expert who testified regarding the effects of alcohol intoxication and gave his opinion that, with a blood alcohol level of .181 at the time of the killings, Hutchinson would have been severely impaired or unconscious. And the defense also presented the testimony of several lay witnesses regarding Hutchinson's diminished capacity at the time of the crime. In our view, Hutchinson's attorney appeared to be thinking strategically when she decided to shield him from the State's expert, even at the risk of losing the testimony of certain defense witnesses. Mindful of the United States Supreme Court's caution that "[j]udicial scrutiny of counsel's performance must be highly deferential," we cannot conclude that Hutchinson has shown that his counsel's performance was deficient. *Strickland*, 466 U.S. at 689.

Because we have determined that Hutchinson failed to meet his burden on the first prong of the *Strickland* test, we are not compelled to address the prejudice prong, for "[f]ailure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Id.* at 700. However, we believe that, borrowing the Court's words in *Strickland*, "[h]ere there is a double failure." *Id.* We could have rejected Hutchinson's ineffective assistance claim by addressing only the requirement of sufficient prejudice. *See id.* at 697 (observing that, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed"). As the State has pointed out, Hutchinson submitted nothing more than the pretrial summaries of the opinions of experts he anticipated calling at trial. *See* Supp. Resp. to Mot. for Discretionary Review at 25. The record includes no signed affidavits or reports from those experts, so the favorableness and admissibility of their testimony is uncertain. Hutchinson's briefing does not explain how he would have met the foundational requirements for the admission of expert testimony regarding diminished capacity. *Id.* at 26-29 (citing *State v. Edmon*, 28 Wn. App. 98, 102-03, 621 P.2d 1310 (1981)). In short, Hutchinson has not met his burden of showing that "there is a *reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694 (emphasis added). We cannot conclude that Hutchinson's personal restraint petition has established the requisite "reasonable probability"—"a probability sufficient to undermine confidence in the outcome" of his trial. *Id.*

Because Hutchinson was required to show both deficient performance and sufficient prejudice but has shown neither, his ineffective assistance claim must fail.

## CONCLUSION

In its September 1988 order and its 1989 explanatory opinion, this court affirmed the trial court's discovery order

requiring Hutchinson to submit to a psychiatric examination by the State's expert. Hutchinson was not deprived of due process when the trial court imposed discovery sanctions for his refusal to submit to that court-ordered examination. Nor did the performance of Hutchinson's trial attorney compromise his constitutional right to a fair trial.

We affirm the decision of the Court of Appeals and deny Hutchinson's personal restraint petition.

ALEXANDER, C.J., and SMITH, JOHNSON, IRELAND, and BRIDGE, JJ., concur.

MADSEN, J. (concurring) — Although I dissented in *State v. Hutchinson*, 135 Wn.2d 863, 889, 959 P.2d 1061 (1998), I must concur in the result of the majority opinion here because Mr. Hutchinson has failed to carry his burden of establishing that the "constitutional error[s] worked to his 'actual and substantial prejudice.' " *In re Pers. Restraint of St. Pierre*, 118 Wn.2d 321, 328, 823 P.2d 492 (1992) (quoting *In re Pers. Restraint of Haverty*, 101 Wn.2d 498, 504, 681 P.2d 835 (1984)).

CHAMBERS, J. (dissenting in part and concurring in part) — I respectfully dissent. Darrin Rand Hutchinson, Sr., was denied due process of law by ambiguous and contradictory language in this Court's fumbled attempt to answer his interlocutory plea for relief. Our failure to timely and clearly articulate the law denied Hutchinson the opportunity to meaningfully present his diminished capacity defense. Therefore, I dissent and would regretfully grant Hutchinson a new trial.

The majority aptly recites the facts. I stress a few. Hutchinson killed two police officers. He intended to present a diminished capacity defense. The prosecution moved to compel a mental examination and the defense objected. The law on diminished capacity was not well developed at the time and the parties sought guidance from us via interlocutory review. On September 26, 1988, about four months before trial, we issued a brief order stating:

"The trial court's . . . order requiring that Mr. Hutchinson submit to an examination by a State's expert is affirmed, but neither the interposing of a diminished capacity defense by Mr. Hutchinson nor his submission to this examination shall be deemed to waive his constitutional right against self-incrimination."

*State v. Hutchinson*, 111 Wn.2d 872, 874, 766 P.2d 447 (1989) (*Hutchinson* I) (quoting court order). We also said an explanatory opinion would be issued in due course. Unfortunately, our order did not explain how to protect Hutchinson's right against self-incrimination during this compelled examination, and the parties agreed to delay execution of the order hoping our full opinion would provide sufficient guidance. But by the end of the year the prosecution grew impatient with us and moved for the examination to be performed immediately.

The trial court granted the prosecution's motion. Hutchinson appeared at the ordered examination with counsel. Inexplicably, the State's psychiatric expert began the proceedings by stating " 'whatever you say does not have Fifth Amendment privileges.' " *State v. Hutchinson*, 135 Wn.2d 863, 872, 959 P.2d 1061 (1998) (*Hutchinson* III) (quoting Verbatim Report of Proceedings (Jan.11, 1989) at 2). Defense counsel responded: " 'Darrin and I won't be saying anything so you will be the only one speaking.' " *Id.* Hutchinson refused to answer any questions.

The defense argued that silence was the only way to preserve Hutchinson's Fifth Amendment rights. The State moved to exclude the testimony of defense diminished capacity experts to sanction Hutchinson's silence. The trial court substantially granted the State's motion, which significantly impaired Hutchinson's ability to present his defense. Two weeks before the trial, with this Court's opinion nowhere in sight, the trial judge mused:

"[P]erhaps it would get the attention of the Supreme Court.

" . . . . I would like to have them hear this and quickly . . . .

" . . . .

"Now, I've ordered the examination, it isn't taking place and I now have ordered sanctions. And I trust that somebody moves the matter to a higher authority."

*Hutchinson* III, 135 Wn.2d at 872 (quoting Verbatim Report of Proceedings (Jan. 11, 1989) at 69-72).

Two days later, this Court's opinion was published. It said in part that:

the defendant must submit to an examination as to mental condition and capacity. . . . The trial court is responsible for the protection of the constitutional rights of the defendant against self-incrimination by in camera consideration. . . .

*Hutchinson* I, 111 Wn.2d at 884-85. It also stated:

[t]he defendant . . . *may refuse to answer any question* if he believes his answer might tend to incriminate him or lead to evidence of an incriminating nature. RCW 10.77.020(4).

*Hutchinson* I, 111 Wn.2d at 884 (emphasis added). The trial judge understood us to mean that the examination must proceed, and that Hutchinson's Fifth Amendment rights would be protected by his in camera review. The defense counsel understood us to mean Hutchinson could refuse to answer all questions tending to incriminate him, which she understood functionally to be the equivalent to not submitting to the examination. The State understood us to mean that the examination must go forward.[4] We muddied the waters, and the learned judge and trial counsel were reasonably confounded.

It denies due process of law to inform a witness that a privilege exists, and then penalize the witness for relying on the privilege. *Raley v. Ohio*, 360 U.S 423, 79 S. Ct. 1257, 3 L. Ed. 2d 1344 (1959). Unlike the majority, I believe *Raley* applies.

---

[4] Greg Canova, special attorney representing the State, had previously expressed sympathy for defense counsel's interpretation. He is quoted by the petitioner as saying "[I]f I were in the defense position, I would simply advise Mr. Hutchinson not to answer any questions, because the way the [Supreme Court's] order is written, you can't tell what he's going to be required to answer and what he isn't going to be required to answer." Mot. for Discretionary Review at 3.

In *Raley*, the Ohio Un-American Activities Commission summoned witnesses to testify about their supposed involvement in the communist party. The witnesses were assured that "they had a right to rely on the privilege against self-incrimination." *Raley*, 360 U.S. at 425. However, Ohio law immunized testimony to legislative commissions, and therefore the witnesses were not actually privileged to refuse to answer questions. *See Raley*, 360 U.S. at 431. The witnesses remained silent, and were consequently indicted, tried, and convicted for failure to answer the commissioners' questions. The Ohio Supreme Court upheld the convictions. The United States Supreme Court reversed, concluding:

> We hold that in the circumstances of these cases, the judgments of the Ohio Supreme Court affirming the convictions violated the Due Process Clause of the Fourteenth Amendment and must be reversed . . . . After the Commission, speaking for the State, acted as it did, to sustain the Ohio Supreme Court's judgment would be to sanction an indefensible sort of entrapment by the State—convicting a citizen for exercising a privilege which the State had clearly told him was available to him.

*Raley*, 360 U.S. at 425-26. Importantly, the Supreme Court also said:

> While there is no suggestion that the Commission had any intent to deceive . . . . A State may not issue commands to its citizens, under criminal sanctions, in language so vague and undefined as to afford no fair warning of what conduct might transgress them. . . . We cannot hold that the Due Process Clause permits convictions to be obtained under such circumstances.

*Raley*, 360 U.S. at 438-39. This fundamental principle of due process should be applied. As Justice Madsen wrote last time Hutchinson was before us, "[T]he majority overlooks the ambiguity of this court's interlocutory order and the vague contradictory language in . . . (*Hutchinson* I), which the defendant reasonably understood to mean that he could refuse to answer questions by the state's expert if he believed the answers might incriminate him." 135 Wn.2d at

889 (Madsen, J., dissenting). Our interlocutory order and *Hutchinson* I, official pronouncements of this Court, misled Hutchinson into believing he had a right to refuse to answer questions he believed would tend to incriminate him. This Court did not include a limitation that the belief be rational. While read in broader context of Fifth Amendment jurisprudence and Washington law, this holding was incorrect. But it was still a holding of this Court, and Hutchinson relied on us to his severe detriment. In this case, there is no meaningful distinction between a criminal prosecution and a sanction that functionally prevents the presentation of defendant's theory of the case.

This Court should do the proper and honorable thing and recognize its own error. Therefore, I would reverse and remand for a new trial. Hutchinson should be clearly instructed that he must fully participate in the examination if he intends to assert a diminished capacity defense, and he should be assured that his Fifth Amendment rights will be protected by in camera review.

I concur with the majority that Hutchinson did not suffer from ineffective assistance of counsel.

SANDERS, J., concurs with CHAMBERS, J.

Reconsideration denied November 4, 2002.