2017 MAR 13 AM 9: 17
COURT OF APPEALS DIV I

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73702-3-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| ROBERT CHARLES JACKSON II, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: March 13, 2017 |
| | ) | |

MANN, J. — Robert Jackson II appeals his conviction for attempted commercial sexual abuse of a minor. Jackson contends that: (1) there was insufficient evidence for a jury to convict him on one of the alternative means of the offense, (2) the trial court erred in providing an expert opinion instruction when the State failed to notify Jackson that it was offering an expert witness under Criminal Rule (CrR) 4.7(a)(2)(ii), and (3) the prosecutor committed reversible misconduct during closing arguments. We disagree and affirm Jackson's conviction.

FACTS

On July 10, 2014, King County Sheriff's Vice Detective Mike Garske posted an ad in Craigslist's[1] "Casual Encounters" section, a part of Craigslist where prostitution is "prevalent." The ad was part of a sting operation called "Cold Shower." It was designed to catch men trying to buy sex with underage prostitutes. In the ad, Garske pretended to be a 20-year-old woman looking for "love:"

> Young Hard Body looking for NSA – w4m – 20 (Newcastle)[2]
>
> Im hella horny. What more can I say, please be for real and come save me. I don't like to do the pic thing because of the "pervs" who just want to play with themselves. I rather be in the room when that happens . . . that it makes it ok. I would help. horny girl needs love.

Jackson responded to Garske's ad via Craigslist's anonymous e-mail interface.[3] Jackson asked Garske, "Do you still need that lovin'? I just got off work and . . . could use some loving myself." Garske replied, "baby come see me." Jackson asked where they could meet. Garske then told Jackson his age and his price:

> [GARSKE]:  im in renton right now
>
> baby I don't like to send pics of myself to anyone last time I did that some dude posted my pick as an anal queen. I have to be careful with that my mom found the ad. I am almost 16 but I look 25. I am smoking hot and look like that girl from twilight. I am nice and tan though
>
> I need you to come see me or come get me so we can meet. I need at least 100. when do you want to meet
>
> [JACKSON]: I can come to you. Where are you? Do you have a place we can be?

---

[1] Craigslist is an online classified advertisement website with sections devoted to topics such as jobs, housing, personals, items for sale, and services.

[2] "NSA" means "no strings attached." "w4m" means a woman interested in a man. This number represents the age of the poster.

[3] When a user responds to an ad on Craigslist, the site's interface anonymizes the user and the poster's e-mail addresses.

[GARSKE]: yes come see me how long will it take to get to renton.[4]

Because of the flurry of e-mails generated by the ad,[5] Garske saved the above three-paragraph response so he could quickly respond to each e-mail inquiry. In Jackson's case, Garske mistakenly sent Jackson the same three-paragraph response twice. This second e-mail also stated that Garske was "almost 16" and that he needed "at least 100."

Jackson became suspicious. "Umm . . . your last message is exactly like an earlier one. What's going on? Why did you tell me your age? Is this a sting?" Garske responded, "hell no . . . . I just wanted to tell you about myself. I am not a cop baby." Jackson responded, "Ok can come to you now. Where do we meet?" Jackson and Garske agreed to meet at a hotel in Renton. Jackson agreed to bring condoms and to call the number Garske gave him when he arrived.

At 8:45 p.m., Jackson arrived at the arranged hotel and called the number that Garske gave him. An undercover female police officer answered and told Jackson to drive around to the back of the hotel so that she could confirm that Jackson was not a cop. Jackson complied, parked, and walked to the designated hotel room. After knocking on the door, Jackson was arrested. In the search incident to arrest, officers found a small bottle of lubricant, $100 in cash, a cell phone, a small piece of paper with the undercover officer's phone number on it, and a wallet with additional cash. A later search of Jackson's phone revealed that it had been used to call the undercover officer's number.

---

[4] (Emphasis added.)
[5] Garske testified that posting this ad on Craigslist was like a "winning slot machine." Garske also said that it was very common to receive 40 or 50 replies in the first 5 minutes after posting the ad.

The State charged Jackson with attempted commercial sexual abuse of a minor under RCW 9.68A.100. Specifically, the State alleged that Jackson violated parts (b) and (c) of the statute by attempting to (1) pay a fee to a minor as compensation for having engaged in sexual conduct and (2) solicit, offer, or request to engage in sexual conduct with a minor for a fee. See RCW 9.68A.100.

After a three-day trial, the jury convicted Jackson of attempted commercial sexual abuse of a minor. Jackson was sentenced to 15.75 months imprisonment.

## ANALYSIS

### I

Jackson argues first that his right to a unanimous jury was violated because the State presented no evidence that Jackson solicited, offered, or requested to engage in sexual conduct with a minor for a fee. See RCW 9.68A.100(c). We disagree.

### A

Criminal defendants have a right to a unanimous jury verdict under article I, section 21 of the Washington Constitution. State v. Owens, 180 Wn.2d 90, 95, 323 P.3d 1030 (2014). This right includes the "right to a unanimous jury determination as to the means by which the defendant committed the crime when the defendant is charged with (and the jury is instructed on) an alternative means crime." Owens, 180 Wn.2d at 95. When there is sufficient evidence before the jury to support each of the alternative means of committing the crime, "express jury unanimity as to which means is not required." Owens, 180 Wn.2d at 95. "If, however, there is insufficient evidence to support any means, a particularized expression of jury unanimity is required." Owens,

180 Wn.2d at 95; State v. Ortega-Martinez, 124 Wn.2d 702, 707-08, 881 P.2d 231 (1994).

Generally, the threshold question before the court is whether the statute at issue is an alternative means statute. Here, because Jackson and the State agree that the crime of commercial sexual abuse of a minor, RCW 9.68A.100, is an alternative means crime, we do not need to decide this issue. Because the jury did not identify the specific means that Jackson violated, we must determine whether there is sufficient evidence to support each of the alternative means of committing the crime. Evidence is sufficient if, viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Owens, 180 Wn.2d at 99 (citing State v. Franco, 96 Wn.2d 816, 823, 639 P.2d 1320 (1982)).

B

The State charged Jackson with violating RCW 9.68A.100(1)(b) and (c). Under this statute, a person is guilty of the crime of commercial sexual abuse of a minor if:

> (b) He or she pays or agrees to pay a fee to a minor or a third person pursuant to an understanding that in return therefore such minor will engage in sexual conduct with him or her; or
>
> (c) He or she solicits, offers, or requests to engage in sexual conduct with a minor in return for a fee.

"A person is guilty of an attempt to commit a crime if, with intent to commit a specific crime, he or she does any act which is a substantial step toward the commission of that crime." RCW 9A.28.020. A substantial step is an act that is "strongly corroborative" of the actor's criminal purpose. State v. Johnson, 173 Wn.2d 895, 899, 270 P.3d 591, 594 (2012) (citing State v. Luther, 157 Wn.2d 63, 78, 134 P.3d 205 (2006)). Consequently,

in order to convict Jackson, the State was required to prove that there was sufficient evidence to demonstrate that Jackson intended to, and took a substantial step toward: (1) agreeing to pay a fee to a minor to engage in sexual conduct, or (2) soliciting, offering, or requesting a minor to engage in sexual conduct. Because the State asked the jury to find Jackson guilty on either of these means, Jackson's right to a unanimous jury is satisfied only if the State presented sufficient evidence of each means. Ortega-Martinez, 124 Wn.2d at 707-08.

Jackson does not challenge the sufficiency of the State's evidence that he attempted to pay a minor to engage in sexual conduct in violation of RCW 9.68A.100(1)(b). Jackson challenges only the sufficiency of the evidence in support of his violation of RCW 9.68A.100(1)(c). Jackson asserts that there was insufficient evidence demonstrating that he attempted to "solicit, offer, or request" to engage in sexual conduct with a minor in return for a fee. We disagree.

After Garske sent Jackson an e-mail with an age ("almost 16") and price ("at least 100"), Jackson replied, "I can come to you." Then, after confirming the exchange, Jackson asked, "Where are you? Do you have a place we can be?" Later, after Garske inadvertently resent a copy of the previous e-mail with the age and price, Jackson again asked "[w]here do we meet?" and "[y]ou have a place we can go to, right?" Once the details of the underlying transaction became clear—"at least 100" for "lovin'" with a woman who was "almost 16"—Jackson's questions about where to meet and where they could "be" constituted the prohibited conduct— a "request[ ] to engage in sexual conduct with a minor in return for a fee." See RCW 9.68A.100(c).

-6-

Jackson argues that the remainder of his exchange with Garske after Garske's mistake (sending the duplicate e-mail) was an exchange about "where and when [Garske and Jackson] should meet, and that [Jackson] will bring condoms at the detective's request." This, Jackson argues, was not a request for sex with a 15-year-old woman for $100. Viewing the evidence in the light most favorable to the State, this argument fails. In the light most favorable to the State, this question is not, as Jackson argues, simply an exchange about "where and when [Garske and Jackson] should meet." Interpreted in the light most favorable to the State, the exchange was a request to engage in sexual conduct with a minor in return for a fee in violation of RCW 9.68A.100(c).

Jackson also asserts that the prosecutor conflated subsections (b) and (c) in his closing arguments by arguing:

> What's interesting here is the moment that the defendant agrees to do all that stuff—that he knows the price, he knows it is for sex—at that moment he knows that and agrees [to] it, he has committed a crime.
>
> Remember, we go all the way back here: pays or agrees to pay; solicit, offer, or request to engage. At the moment when he has that back-and-forth, he has committed the crime.

While we agree that this statement alone does combine both means, the prosecutor also argued:

> [Y]ou commit the crime . . . when you pay or agree to pay a fee to a minor pursuant to an understanding that in return, the minor will engage in sexual conduct. Or you solicit, offer, or request to engage in sexual conduct with a minor in return for a fee.
>
> . . . .
>
> [Y]ou only have to attempt to make an agreement with somebody. You only have to attempt to try to solicit them. You only have to attempt to offer.

Reviewing the evidence presented and the prosecutor's argument in full, we agree with the State that there was sufficient evidence from which a rational trier of fact could conclude that Jackson attempted to (1) agree to pay a minor for sexual conduct and (2) request sexual conduct from a minor in exchange for a fee. Jackson took a substantial step toward requesting sex with a minor: he followed through on the e-mail exchange by driving to the hotel with condoms, lubricant, and the correct amount of money. Jackson's constitutional right to a unanimous jury verdict was not violated.

II

Jackson argues second that the trial court erred by instructing the jury on expert testimony despite the State's failure to identify Garske as an expert under CrR 4.7(a)(2)(ii). We disagree.

A

CrR 4.7(a)(2)(ii) requires the prosecuting attorney to disclose to the defendant "any expert witnesses whom the prosecuting attorney will call at the hearing or trial, the subject of their testimony, and any reports they have submitted to the prosecuting attorney." The purpose of this rule is to prevent the defendant from being prejudiced by surprise or government misconduct. State v. Cannon, 130 Wn.2d 313, 328, 922 P.2d 1293 (1996). Failure to comply with discovery rules may lead to a continuance, dismissal, or other order deemed just by the court under the circumstances. CrR 4.7(h)(7)(i); State v. Barry, 184 Wn. App. 790, 796, 339 P.3d 200 (2014).

A trial court's discovery decision will be upheld on appeal absent a manifest abuse of discretion. State v. Blackwell, 120 Wn.2d 822, 826, 845 P.2d 1017 (1993). A court abuses its discretion only when its decision is "manifestly unreasonable, or

exercised on untenable grounds, or for untenable reasons." State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). In other words, we ask whether "any reasonable judge would rule as the trial judge did." State v. Thang, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002).

The admissibility of expert testimony is governed by ER 702. If "specialized knowledge" will assist the trier of fact in understanding the evidence, then a witness qualified as an expert by "knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." ER 702. "Expert testimony is helpful to the jury if it concerns matters beyond the common knowledge of the average layperson and is not misleading." State v. Groth, 163 Wn. App. 548, 564, 261 P.3d 183 (2011). If expert testimony is admitted, then the trial court should provide the expert witness pattern instruction if requested.[6] Jury instructions are "sufficient when they allow counsel to argue their theory of the case, are not misleading, and when read as a whole properly inform the trier of fact of the applicable law." Bodin v. City of Stanwood, 130 Wn.2d 726, 732, 927 P.2d 240 (1996).

B

Here, while the State's witness list included seven police officers, none were designated as experts. Contrary to the requirement in CrR 4.7(a)(2)(ii), the State did not disclose during discovery that it was planning to call expert witnesses. The State did, however, identify Garske in the Certification for Determination of Probable Cause as assisting Renton police "in an undercover operation targeting males soliciting the

---

[6] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 6.51 (4th ed. 2016) (WPIC).

services of juvenile prostitutes." During discovery, the State also provided Jackson a copy of Garske's police report that included a description of the sting operation and Garske's experience. The State also listed Garske as a witness in its trial brief and offered the expert witness pattern instruction as part of its pretrial proposed jury instructions.

During trial, the State elicited almost 30 pages of testimony from Garske explaining his training and experience as a vice detective specializing in undercover prostitution operations. Garske explained why the juvenile prostitution industry moved online, how it functions, the language it employs, and law enforcement efforts. Other than minor hearsay and relevance objections, Jackson did not object to the basis of Garske's experience, specialized knowledge, or the helpfulness of this testimony. Moreover, during cross-examination Jackson elicited similar expert testimony from Garske concerning his experience with women on Craigslist who are not prostitutes and legitimately seeking casual sex, how prostitution is marketed on Craigslist, and the "going rate" for prostitution.

During closing argument, the State did not identify Garske as an expert or suggest that the jury should convict Jackson based on Garske's expert opinions. The State instead focused on Garske's testimony describing the sting operation, local prostitution, his communications with Jackson, and Jackson's arrest. Jackson also relied on Garske's testimony during closing. For example, Jackson relied on Garske's specialized knowledge of the "upsell" during his closing to argue that Jackson brought

extra money to the hotel because he thought that he was dealing with an adult prostitute who would upsell her services.[7]

Although the State failed to identify Garske as an expert as required by CrR 4.7(a)(2)(ii), Jackson had notice that Garske would testify and the subjects of Garske's testimony. The trial court did not abuse its discretion in overruling Jackson's discovery objection and providing the jury with the expert witness instruction.

Moreover, Jackson does not show that he was prejudiced by the expert witness instruction. The instruction informed the jury that a witness with special training, education, or experience was allowed to express an opinion in addition to testifying to facts. The instruction expressly informs the jury that they "are not, however, required to accept his or her opinion." Jackson does not claim or demonstrate that the instruction misled the jury, failed to properly inform the jury of the applicable law, or prohibited him from arguing the theory of his case. Instead, Jackson relied on Garske's expertise both in cross-examination and in closing. Any error in giving the requested instruction was not prejudicial.

III

Jackson argues next that the prosecutor committed reversible misconduct at trial by impugning defense counsel's integrity during closing argument. We disagree.

A

Allegations of prosecutorial misconduct are reviewed under an abuse of discretion standard. State v. Brett, 126 Wn.2d 136, 174-75, 892 P.2d 29 (1995). To

---

[7] Report of Proceedings (RP) (May 7, 2015) at 446 (arguing that Jackson brought extra cash because he expected the upsell tactic that Garske explained).

establish prosecutorial misconduct, the defendant must show that the prosecutor's comments were "both improper and prejudicial in the context of the entire record and circumstances at trial." State v. Thorgerson, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). Prosecutorial misconduct does not constitute prejudicial error unless "there is a substantial likelihood that the instances of misconduct affected the jury's verdict. Brett, 126 Wn.2d at 175.

B

Jackson argued in closing argument that the jury should convict him of the lesser-included offense of attempting to patronize a prostitute. The prosecutor, in rebuttal, made the following statement:

> The defendant knows what he did. He has engaged in the time-honored tradition of trying to cut his losses by asking you to acquit [sic][8] him of that lesser count. Don't be looped into that. If you believe his story, cut him loose. Cut him loose.

Jackson assigns error to this statement and argues that the statement "time-honored tradition of trying to cut his losses" was misconduct because it (1) disparaged defense counsel by suggesting that counsel acted with dishonesty and (2) relied on facts not in evidence.

In general, a prosecutor has "wide latitude" in closing argument to draw and express reasonable inferences from the evidence. State v. Fisher, 165 Wn.2d 727, 747, 202 P.3d 937 (2009) (quoting State v. Gregory, 158 Wn.2d 759, 860, 147 P.3d 1201 (2006)). Further, "the prosecutor, as an advocate, is entitled to make a fair response to the arguments of defense counsel." State v. Russell, 125 Wn.2d 24, 87, 882 P.2d 747

---

[8] Given Jackson's argument in closing that the jury should convict him of the lesser-included offense, and the prosecutor's characterization of that strategy as Jackson 'cut[ing] his losses," it is most likely that the prosecutor intended to say "convict" rather than "acquit."

(1994). A prosecutor may not, however, "disparagingly comment on defense counsel's role or impugn the defense lawyer's integrity." Thorgerson, 172 Wn.2d at 451.

Here, however, the prosecutor did not disparage defense counsel. Instead, in direct response to Jackson's closing argument that the jury should convict him of the lesser-included offense of attempting to patronize a prostitute, the prosecutor argued that "[t]he defendant" had "engaged in the time-honored tradition of trying to cut his losses."[9] This statement was not an attack on Jackson or his counsel personally; nor did the statement denigrate defense counsel's role. The statement was instead a fair characterization of Jackson's strategy of admitting to a lesser offense in hopes that the jury would acquit him of the more serious offense.

Jackson relies primarily on Thorgerson to support his claim. In Thorgerson, the prosecutor referred to the defense's presentation as using "sleight of hand" to distract the jury from "pay[ing] attention to the evidence." 172 Wn.2d at 452. While finding the error harmless, the Supreme Court determined that "the prosecutor went beyond the bounds of acceptable behavior in disparaging defense counsel." Thorgerson, 172 Wn.2d at 452. The court held the statement was improper because the dictionary definition of "sleight of hand" "implies wrongful deception or even dishonesty in the context of a court proceedings." Thorgerson, 172 Wn.2d at 452.

Here, the phrase "time-honored tradition of trying to cut his losses" is not improper because it does not imply deception or dishonesty. The dictionary definition of "time-honored" means "honored or entitled to honor because of age or long usage" and

_____

[9] (Emphasis added.)

-13-

"long established."[10] The dictionary definition of "cut your losses" is to "avoid losing any more money than you have already lost."[11] This phrase does not imply that Jackson or his counsel's strategy was to lie to or mislead the jury. Indeed, viewing the phrase in the case's context, the phrase accurately describes Jackson's trial strategy: admit to attempting to patronize a prostitute, but not a minor prostitute.

Moreover, in addition to not being improper, the comments were not prejudicial. Jackson admitted to attempting to patronize a prostitute; the only disputed issue was whether he knew she was a minor. During the closing argument, the State summarized the testimony and argued that Jackson knew the prostitutes age based on: (1) the first word in the ad's title ("Young"), (2) Garske's e-mail in response to Jackson's inquiry stating "she" was "almost 16," looked "like the girl in Twilight," and referred to her mom, (3) Garske's mistaken repetition of that e-mail, (4) Jackson's response asking, "Why did you tell me your age? Is this a sting?" and (5) the fact that Jackson continued communicating and ultimately showed up at the designated hotel. Considering the weight of the evidence against Jackson, there is not "a substantial likelihood" that the comments affected the jury's verdict. Brett, 126 Wn.2d at 175.

The trial court did not abuse its discretion in overruling Jackson's objections to the State's alleged prosecutorial misconduct during the State's closing argument.

IV

Jackson raised three arguments in his statement of additional grounds. We consider issues in statements of additional grounds that are not repetitive of briefing and

---

[10] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2395 (2002).
[11] CAMBRIDGE ENGLISH DICTIONARY ONLINE, http://dictionary.cambridge.org/us/dictionary/english/cut-your-losses (last visited Mar. 1, 2017).

that adequately inform the court of the nature and occurrence of the alleged errors. See RAP 10.10(a). Jackson argues first that the statement "[i]f you believe him, cut him loose" led the jury to believe the lesser offense of attempting to patronize a prostitute carried no punishment. This argument fails. The court granted the State's motion in limine for an order prohibiting the defense from referring to Jackson's punishment.

Jackson argues second that the jury should have been informed that that Garske violated Craigslist's terms of use requiring users to affirm that they are over the age of 18. This argument fails. The jury was informed of Craigslists' terms. Garske testified to Craigslist's terms of use including the requirement that posters be 18 years old. And further, both counsel discussed the terms of use during closing arguments.

Jackson argues finally that he received ineffective assistance of counsel and lists multiple assignments of error. The alleged errors concern the effectiveness of defense counsel and particularly whether counsel appropriately emphasized certain facts or arguments. Some assignments reference facts outside of the record.

We review an ineffective assistance of counsel claim de novo. In re Pers. Restraint of Hutchinson, 147 Wn.2d 197, 207, 53 P.3d 17 (2002). In order to demonstrate ineffective assistance of counsel, a defendant must show that his counsel's representation was deficient and that the deficient performance prejudiced the defendant. Hutchinson, 147 Wn.2d at 206.

Here, defense counsel's conduct was not deficient. Although Jackson's counsel was apparently very busy,[12] his conduct did not fall below an objective standard of

---

[12] For example, Jackson's counsel asked the court for leave to attend another trial just after the jury was impaneled.

reasonableness. It appears from the record that counsel's failure to object, deemphasize, or emphasize certain facts was strategic. Jackson's claim fails.

We affirm Jackson's conviction.[13]

WE CONCUR:

---

[13] The State requests attorney fees on appeal in the event that it prevails. The parties are referred to RAP 14.2.