# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, )<br><br>Respondent, )<br><br>v. )<br><br>JOHN ALLEN HOLCOMB, )<br><br>Appellant. ) | DIVISION ONE<br><br>No. 75245-6-I<br><br>OPINION PUBLISHED IN PART<br><br>FILED: August 7, 2017 |

DWYER, J. — John Holcomb appeals from the judgment entered on a jury's verdict convicting him of one count of interfering with the reporting of domestic violence. On appeal, Holcomb challenges the constitutional adequacy of the information charging him with this offense.

We conclude that the information was deficient because, notwithstanding a liberal construction, the information did not reasonably apprise Holcomb of the actual underlying domestic violence crime that the State alleged that he committed—assault in the fourth degree—thereby failing to inform Holcomb of a necessary and particular fact supporting an essential element of the charged interference crime.[1] Accordingly, we reverse the judgment of guilt with orders to the trial court to dismiss the case without prejudice.[2]

---

[1] See State v. Nonog, 169 Wn.2d 220, 225-26, 237 P.3d 250 (2010).

[2] Holcomb raises additional arguments that are resolved in the unpublished portion of this opinion.

I

During the evening of September 15, 2015, Shaunna Holcomb came home and began to argue with her husband, John Holcomb. In response, Holcomb[3] pushed Shaunna out of the room in which the quarrel began. As they continued to argue, Holcomb grabbed Shaunna firmly by the arms. Shaunna broke free from Holcomb's grasp and attempted to use her cellular phone to contact 911. Holcomb tried to take the cellular phone away from her and he eventually pulled the phone out of her hand and threw it against a wall.

Shaunna then struck Holcomb on the back of his head. He responded by grabbing her around the neck in a choke hold. Shaunna began to lose consciousness and Holcomb released her. Shaunna fled outside and continued trying to contact the police. She ultimately succeeded in contacting 911.

The State, upon amended information, charged Holcomb with two offenses: one count of assault in the second degree (assault by strangulation) and one count of interfering with the reporting of domestic violence.

At trial, after the conclusion of the testimony, the State proposed that the jury be instructed on the crime of assault in the fourth degree as the underlying crime for the interference charge. Defense counsel objected on the ground that the assault in the fourth degree instruction would be confusing to the jury because it was an instruction on an uncharged crime.

In response, the prosecutor brought to the trial court's attention a "note on use" from 11 Washington Practice: Washington Pattern Jury Instructions:

---

[3] When this opinion refers to Holcomb, it refers to John Holcomb.

Criminal 36.57, at 688-89 (3d ed. 2008) (WPIC), regarding the manner of issuing jury instructions for the crime of interfering with the reporting of domestic violence when the predicate domestic violence offense is not separately charged. The WPIC note reads, "For the rare case in which the underlying domestic violence offense is not being tried along with this offense, an instruction should be drafted setting forth the elements of the underlying domestic violence offense." WPIC 36.57.

The trial court overruled defense counsel's objection and issued a to-convict instruction identifying assault in the fourth degree as the underlying domestic violence crime for the interference charge. The to-convict instruction for the interference charge did not identify the assault in the second degree charge as the underlying domestic violence crime.

The jury returned a verdict acquitting Holcomb of the assault in the second degree charge but finding Holcomb guilty of interfering with the reporting of domestic violence.

After the jury rendered its verdict, Holcomb filed a posttrial motion to arrest the judgment asserting that the amended information did not charge a crime and that insufficient evidence supported the jury's verdict, pursuant to CrR 7.4(a)(2), (3).[4] The trial court denied Holcomb's motion and entered judgment on the jury's verdict.

---

[4] CrR 7.4(a) reads, in pertinent part:
**Arrest of Judgments.** Judgment may be arrested on the motion of the defendant for the following causes: . . . (2) the indictment or information does not charge a crime; or (3) insufficiency of the proof of a material element of the crime.

Holcomb now appeals.

II

Holcomb contends that the information was deficient because, notwithstanding a liberal construction, the information failed to include a necessary and particular fact supporting an essential element of the charged crime of interfering with the reporting of domestic violence. This is so, he asserts, because the information did not specifically identify that the predicate domestic violence offense for the charged interference crime was assault in the fourth degree. Holcomb is correct.

A

We first address whether commission of a specific domestic violence crime is an essential element of the interference crime codified at RCW 9A.36.150.[5]

---

[5] Our Supreme Court in Nonog, 169 Wn.2d 220, heard argument regarding whether RCW 9A.36.150 required that a charging document set forth the *specific* underlying domestic violence crime—rather than a generalized reference that a "crime of domestic violence, as defined in RCW 10.99.020" was committed. However, the court declined to reach a decision on this issue:

> We need not decide whether the statutory text quoted in count IV, "having committed a crime of domestic violence as defined in RCW 10.99.020," CP at 11-12, is always constitutionally sufficient to apprise a defendant of the nature of the charge against him. We need only decide whether Nonog's information, as a whole, made it clear that the crimes alleged to have occurred on March 30, 2006 in counts I and II were the domestic violence crimes referenced in count IV. . . .
> . . . In considering this question, we will place Nonog's argument in its best light and assume, without deciding, that the underlying domestic violence crime is an element of the interfering with reporting offense. This means that, to be constitutionally sufficient, the information as a whole needed to reasonably apprise Nonog of the underlying crime. See [State v. ]Kjorsvik, 117 Wn.2d [93, ]109-11[, 812 P.2d 86 (1991)].

Nonog, 169 Wn.2d at 228-29.

> In order to decide the matter before us, we must resolve this question.

As codified, the crime of interfering with the reporting of domestic violence reads:

> (1) A person commits the crime of interfering with the reporting of domestic violence if the person:
>> (a) Commits a crime of domestic violence, as defined in RCW 10.99.020; and
>> (b) Prevents or attempts to prevent the victim of or a witness to that domestic violence crime from calling a 911 emergency communication system, obtaining medical assistance, or making a report to any law enforcement official.
>> (2) Commission of a *crime of domestic violence* under subsection (1) of this section is a *necessary element* of the crime of interfering with the reporting of domestic violence.

RCW 9A.36.150 (emphasis added).

Thus, an essential element of the interference charge is commission of a specific crime of domestic violence as defined in RCW 10.99.020. We know this because our legislature—in addition to setting forth the essential elements of the crime in subsections (1)(a) and (1)(b)—further emphasized in subsection (2) that commission of a domestic violence crime pursuant to subsection (1) is a *necessary* element. Turning to subsection (1), we note that the interference crime requires that the State prove the commission of a domestic violence crime *as defined in RCW 10.99.020*.

Continuing on to RCW 10.99.020, the statute sets forth *23 distinct domestic violence crimes*, including several offenses with distinct degrees of culpability. That RCW 10.99.020 sets forth numerous offenses with distinct degrees is significant. It indicates that the legislature intended that a *specific*

crime of domestic violence be elected, alleged, and proved.[6] Indeed, we cannot conceive that the legislature intended that a criminal defendant be left to prepare a defense against the interference charge without notice as to which of the 23 wide-ranging offenses set forth in RCW 10.99.020 is the predicate domestic violence offense that the State alleges was committed.

Thus, RCW 9A.36.150 requires, as an essential element, that the State elect, allege, and prove that one of the specific crimes defined in RCW 10.99.020 (rather than broadly and generally asserting that some one of the 23 domestic violence crimes listed in RCW 10.99.020) was committed. In this way, an essential—and necessary—element of RCW 9A.36.150 is proof of the commission of a specific domestic violence crime.

B

Holcomb contends that the State's amended information is deficient because, in charging the interference count, it failed to set forth the specific domestic violence offense that served as the predicate offense. He is correct.

In a criminal prosecution, the accused has a constitutional right to be informed of the charge the accused is to meet at trial.[7] State v. Pelkey, 109

---

[6] The proof required for the interference offense regarding commission of a crime is, accordingly, unlike that required by some other criminal liability theories, such as accomplice liability, wherein only the "general crime" ("homicide," "assault," "kidnapping," etc.) must be established (e.g., intent to commit murder), rather than the specific degree of the crime (e.g., murder in the first degree). See In re Pers. Restraint of Sarausad, 109 Wn. App. 824, 834-36, 39 P.3d 308 (2001) (discussing State v. Cronin, 142 Wn.2d 568, 14 P.3d 752 (2000); State v. Roberts, 142 Wn.2d 471, 14 P.3d 713 (2000)).

By contrast, the interference crime herein references RCW 10.99.020(5), which does not set forth generic crimes in its list of domestic violence crimes but, rather, sets forth crimes with regard to superior and inferior degrees (e.g., assault in the first degree, assault in the second degree, etc.).

[7] WASH. CONST. art I, § 22 ("In criminal prosecutions the accused shall have the right . . . to demand the nature and cause of the accusation against him.").

Wn.2d 484, 487, 745 P.2d 854 (1987). For that reason, the charging document must include all essential elements of a crime in order to apprise the accused of the charges and facilitate the preparation of a defense. State v. Pineda-Pineda, 154 Wn. App. 653, 670, 226 P.3d 164 (2010) (citing State v. Vangerpen, 125 Wn.2d 782, 787, 888 P.2d 1177 (1995)). This includes the necessary and particular "supporting facts giving constitutional notice of" each element. State v. Nonog, 169 Wn.2d 220, 225, 237 P.3d 250 (2010). "More than merely listing the elements, the information must allege the particular facts supporting them." Nonog, 169 Wn.2d at 226 (citing State v. Leach, 113 Wn.2d 679, 688, 782 P.2d 552 (1989)).

An essential element of RCW 9A.36.150 is proof of the commission of a specific domestic violence crime as defined in RCW 10.99.020. Therefore, to satisfy the constitutional requirement that a criminal defendant be apprised of that with which he is being charged, an information alleging the crime of interfering with the reporting of domestic violence must set forth the specific underlying domestic violence crime that serves as the predicate offense (rather than a broad claim that a crime of domestic violence was committed). Indeed, as our Supreme Court in Nonog assumed and as we now decide, "to be constitutionally sufficient, the information as a whole needed to reasonably apprise [the defendant] of the underlying crime." 169 Wn.2d at 229 (citing State v. Kjorsvik, 117 Wn.2d 93, 109-11, 812 P.2d 86 (1991)).

Here, the State's amended information charged Holcomb with one count of assault in the second degree and one count of interfering with the reporting of domestic violence. The amended information read, in pertinent part:

COUNT I

**Assault in the Second Degree – Strangulation or Suffocation DV – RCW 9A.36.021(1)(g) and RCW 10.99.020 – Class B Felony**

On or about September 15, 2015, in the County of Skagit, State of Washington, the above-named Defendant did intentionally assault another person, to wit: Shaunna Marie Holcomb, by strangulation or suffocation, contrary to Revised Code of Washington 9A.36.021(1)(g); **AND FURTHERMORE, the defendant did the [sic] commit the above crime against a family or household member, contrary to Revised Code of Washington 10.99.020.**

. . . .

COUNT II

**Interfering With Reporting Domestic Violence – RCW 9A.36.150(1) – Gross Misdemeanor**

On or about September 15, 2015, in the County of Skagit, State of Washington, *the above-named Defendant did commit a crime of domestic violence as defined in RCW 10.99.020* and did prevent or attempt to prevent the victim of or a witness to that domestic violence crime from calling a 911 emergency communication system, obtaining medical assistance, or making a report to any law enforcement official; contrary to Revised Code of Washington 9A.36.150(1).

(Emphasis added.) The State did not charge Holcomb with assault in the fourth degree.

The State contends that our Supreme Court's opinion in <u>Nonog</u> militates in its favor. In <u>Nonog</u>, after assuming—without deciding—that the information therein needed to reasonably apprise the defendant of the underlying domestic violence crime, the court held that the information met that standard:

From [count IV], Nonog had clear notice that he was accused of committing a crime of domestic violence on March 30, 2006. Furthermore, count IV stated that the crime was "of the

- 8 -

same or similar character and based on the same conduct as another crime charged" in the information. [CP] at 11. *Reviewing the information as a whole, one can reasonably discover that Nonog was charged with two other crimes occurring on March 30, 2006*, each of which had the term "domestic violence" in the boldface title of the offense. See id. at 10-11. Under Kjorsvik's liberal construction test, the information reasonably apprised Nonog of the domestic violence crimes underlying the interfering with reporting charge in count IV.

Nonog, 169 Wn.2d at 229 (emphasis added).

Holcomb counters that Nonog can be distinguished from his case. This is so, Holcomb avers, because the information herein did not reasonably apprise him that assault in the *fourth* degree was the underlying domestic violence crime to be proved. Holcomb is correct.

Because Holcomb raised this issue for the first time after the jury announced its verdicts, we liberally construe the information as a whole. Pineda-Pineda, 154 Wn. App. at 670. Pursuant to this reading, the information apprised Holcomb either that assault in the second degree was the underlying domestic violence crime for the interfering with the reporting of domestic violence charge or that no specific crime was alleged as the underlying crime. The information set forth, as count II, the interference charge and identified the commission of a domestic violence offense as "Defendant did commit a crime of domestic violence as defined in RCW 10.99.020." The only other charged crime set forth anywhere in the amended information was assault in the second degree, as set forth in count I.

The count setting forth the assault in the second degree offense referenced a crime of domestic violence. The amended information

emphasized—in bolded typeface—that the victim of the charge of assault in the second degree was a family or household member, in violation of RCW 10.99.020.[8] The amended information further identified that the underlying act for the assault charge occurred on September 15, 2015—the same day on which the information alleged that the interference crime, charged in count II, occurred.

When the assault charge is read in conjunction with the interference charge, the information could be construed so as to apprise Holcomb that the charge of assault in the second degree, alleged in count I, formed the basis of the domestic violence offense element of the interference charge, alleged in count II.

But this was not the State's theory of the case and was not the allegation made against Holcomb. Unlike in Nonog, the underlying domestic violence crime for the interference charge alleged and argued at trial was not the other charged offense (assault in the second degree) but, rather, was an uncharged offense (assault in the fourth degree). At trial, the State presented evidence in support of assault in the fourth degree as the predicate crime. In addition, at the State's urging, the trial court instructed the jury that, to convict Holcomb of the charge of interfering with the reporting of domestic violence, it must find that he committed the underlying offense of assault in the *fourth* degree. Significantly, the to-convict instruction did not allow the jury to convict Holcomb of the interference

---

[8] Assault in the second degree, when perpetrated against a family or household member, qualifies as a domestic violence offense. RCW 10.99.020(5)(b).

charge by finding that he committed assault in the second degree as the predicate crime.

In this way, the information did not reasonably apprise Holcomb of the actual underlying crime that the State alleged that he committed—assault in the fourth degree—thereby failing to inform Holcomb of an essential element of the charged interference crime. Indeed, by not formally alleging assault in the fourth degree as the underlying offense but yet presenting testimony on, arguing to the jury about, and urging the court to instruct the jury on assault in the fourth degree, the State prejudiced Holcomb's ability to defend himself at trial.

It is clear that the State tried and argued assault in the fourth degree as the underlying domestic violence offense. But the information did not set forth assault in the fourth degree as the predicate crime. Even when reviewing the State's amended information in the light most favorable to the government, it is deficient.[9]

"A deficient complaint or information is dismissed without prejudice to the State's ability to refile charges, subject to the statute of limitations." Nonog, 169 Wn.2d at 226 n.3 (citing State v. Quismundo, 164 Wn.2d 499, 503-04, 192 P.3d 342 (2008)).

Accordingly, we reverse the judgment of guilt with instructions to the trial court to dismiss the charge without prejudice.[10]

---

[9] The State claims that Holcomb cannot now challenge the information because he did not request a bill of particulars. In Nonog, the Supreme Court specifically rejected this argument. 169 Wn.2d at 225 n.2.

[10] Double jeopardy does not bar the filing of a new information predicated upon assault in the fourth degree as the underlying offense. This is so because the State presented sufficient evidence of the commission of this crime at trial.

The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions. See RCW 2.06.040.

III

Holcomb next contends that there was insufficient evidence presented at trial to support his conviction of interfering with the reporting of domestic violence. This is so, he contends, because the jury was not instructed to consider the single means of interference by preventing or attempting to prevent the victim from contacting 911 and because the State failed to present sufficient evidence to support the remaining alternative means on which the jury was instructed. Holcomb is wrong.

In Washington, a criminal defendant is entitled to a unanimous jury verdict. WASH. CONST. art. I, § 21; State v. Woodlyn, 188 Wn.2d 157, 162-63, 392 P.3d 1062 (2017) (citing State v. Ortega-Martinez, 124 Wn.2d 702, 707, 881 P.2d 231 (1994)).

> This right may also include the right to a unanimous jury determination as to the *means* by which the defendant committed the crime when the defendant is charged with (and the jury is instructed on) an alternative means crime. In reviewing this type of challenge, courts apply the rule that when there is sufficient evidence to support each of the alternative means of committing the crime, express jury unanimity as to which means is not required. If, however, there is insufficient evidence to support any means, a particularized expression of jury unanimity is required.

State v. Owens, 180 Wn.2d 90, 95, 323 P.3d 1030 (2014). This right is not boundless, however, because

> [w]hen there is sufficient evidence to support each alternative means, Washington defendants do not enjoy a recognized right to

- 12 -

express unanimity. In Arndt, this court declared that defendants have no right to unanimity as to means so long as all means alleged are (1) supported by sufficient evidence and (2) "'not repugnant'" to one another. 87 Wn.2d [374,] 378-79[, 553 P.2d 1328 (1976)] (quoting State v. Kosanke, 23 Wn.2d 211, 213, 160 P.2d 541 (1945)). Sandholm most recently restated this general rule: "In alternative means cases, where the criminal offense can be committed in more than one way, we have announced a rule that an expression of jury unanimity is not required provided each alternative means presented to the jury is supported by sufficient evidence." 184 Wn.2d [726,] 732 [, 364 P.3d 87 (2015)].

Woodlyn, 188 Wn.2d at 164.

The court in Woodlyn also emphasized that which the jury unanimity inquiry is not. In Woodlyn, the court addressed whether there was a particularized expression of jury unanimity when no unanimity instruction was given but sufficient facts were adduced at trial to support one alternative means and no evidence was adduced concerning another alternative means. 188 Wn.2d at 165. The court expressly rejected that notion, calling it "[a] post hoc review of the record" and concluding that it "does not allow an appellate court to see into the minds of jurors" and, therefore, "does not dispel the possibility that the jury might have convicted based on insufficient evidence." Woodlyn, 188 Wn.2d at 166. "Indeed," the court continued,

> given that the trial court instructed the jury in this case on two alternative means, CP at 72-73, it would be reasonable for the jurors to think that either alternative represented a viable path to conviction. Suppl. Br. of Pet'r at 15 (" 'If the judge tells a jury that they may find the defendant guilty on a theory that is factually unsupported . . . , the jurors understandably might believe that there must be evidence to support that theory.' " (quoting Commonwealth v. Plunkett, 422 Mass. 634, 639-40, 664 N.E.2d 833 (1996))). Absent some form of colloquy or explicit instruction, we cannot assume that every member of the jury relied solely on the supported alternative.

Woodlyn, 188 Wn.2d at 166.

In State v. Nonog, 145 Wn. App. 802, 812-13, 187 P.3d 335 (2008), aff'd, 169 Wn.2d 220, 237 P.3d 250 (2010), we determined that the statute herein, RCW 9A.36.150, sets forth an alternative means crime. We concluded that the interference statute set forth three alternative means by which a person may commit the element of interfering with reporting, by preventing or attempting to prevent the victim from: calling a 911 emergency communication system, obtaining medical assistance, or making a report to any law enforcement official. Nonog, 145 Wn. App. at 813. We explained:

> The variations in RCW 9A.36.150(1) are in the conduct of the would-be reporter rather than in the conduct of the interferer, but they are not merely descriptive or definitional of essential terms. The variations are themselves essential terms. The statute is structured similarly to RCW 9A.72.120, the statute that defines the crime of "tampering with a witness." Tampering may be committed by inducing a witness to testify falsely, to be absent from official proceedings, or to withhold information from a law enforcement agency. RCW 9A.72.120. Witness tampering is regarded as an alternative means crime. State v. Fleming, 140 Wn. App. 132, 135-37, 170 P.3d 50 (2007). Interfering with reporting of a crime of domestic violence must similarly be regarded as an alternative means crime because the statute does not criminalize all acts that might appear to constitute interfering with the reporting of domestic violence. Interference is culpable only when a victim or witness is trying to report the crime to a particular entity.

Nonog, 145 Wn. App. at 812-13.

Here, the jury was instructed on two of the alternative means set forth in RCW 9A.36.150—that Holcomb prevented or attempted to prevent Shaunna from (1) contacting 911 and (2) making a report to a police officer.

At trial, Shaunna testified:

- 14 -

> At some point -- I had no idea when I picked up my phone, but at some point I realized I had my phone in my hand. So *I tried to dial 911* and he saw what I was doing and then tried to get my phone.
>
> And so I tried to get away from him, and because of the way he was standing, the only way I could go was to my left, which was down our hallway and into our bedroom.
>
> And when we got in there, I was on the far side of the room trying to just stay away from him, and he was still yelling at me and I -- then he tried to take my phone again. And at one point he was pulling it from my hand and then he got it and he threw it against the wall.

(Emphasis added.) Later, after Shaunna testified that Holcomb had strangled her and that she had lost consciousness, she continued:

> Once I got up, I got my phone and I tried to get out of the house. I did get out of the house and I was out front and *I was still trying to call the police.*
>
> And he came -- he followed me out of the house and was reaching around me to get the phone. And I was -- I was able to keep it away from him and managed to dial 911. And from the point that I was able to connect to 911, he stopped and he let me go.

(Emphasis added.)

A reasonable jury could conclude from Shaunna's testimony that she was attempting to call 911 *as well as* make a report of domestic violence to the police. She initially testified to trying to call 911, despite Holcomb's interference, and she later testified that she was "still trying to call the police." That Shaunna testified that she was still attempting to use her cellular phone to contact the police implies that, when she initially attempted to contact 911 prior to the strangulation, she was, at a minimum, trying to make a report to a police officer. Consequently, viewed in the light most favorable to the State, Owens, 180 Wn.2d at 99 (citing State v. Franco, 96 Wn.2d 816, 823, 639 P.2d 1320 (1982)),

Shaunna's testimony satisfied both of the alternative means on which the jury was instructed.[11] There was no error.

IV

Holcomb next asserts that double jeopardy bars a retrial on the interference charge. This is so, Holcomb asserts, because the Supreme Court's analysis in Nonog necessarily demands that assault in the second degree—the only domestic violence crime actually mentioned in the information—be deemed, as a matter of law, to have been the underlying offense for the interference charge. From this premise, Holcomb argues that the law *forces* the State to accept this construction of the information. And, given that Holcomb was found not guilty of the assault in the second degree charge, Holcomb further avers, he must—as a matter of law—be deemed acquitted of the interference charge. Thus, Holcomb concludes, double jeopardy bars a retrial on the interference charge.

He is wrong. In Nonog, the prosecutor tried and argued the case such that it was clear that the domestic violence charges specifically alleged in the information were the predicate crimes for the interference charge therein. The State was not *forced* by the Supreme Court to adopt that construction—instead,

---

[11] The Washington Supreme Court in Nonog declined to decide the question of whether RCW 9A.36.150 is an alternative means statute, stating in a footnote that "Nonog raised other claims in the Court of Appeals but the only issue here is the sufficiency of the information." 169 Wn.2d at 224 n.1.

We are uncertain as to the continued efficacy of our analysis in Nonog on this question, given our Supreme Court's recent opinions in Owens, 180 Wn.2d at 95-99, and State v. Peterson, 168 Wn.2d 763, 769-71, 230 P.3d 588 (2010), both of which were filed after our opinion in Nonog.

Nevertheless, we do not resolve this question both because the State did not assign error to the trial court's instructions on this issue and because the issue was not briefed to us. Should the State choose to refile charges against Holcomb, we do not view the law of the case doctrine as barring litigation on this issue.

the State *argued for* such a construction, as it reflected how the trial had actually played out.

Not so here.

Nonog makes clear that dismissal without prejudice is the appropriate remedy for a deficient information. 169 Wn.2d at 226 n.3 (citing Quismundo, 164 Wn.2d at 503-04). Nothing in that case requires the State to be bound to a construction of an incomplete information that does not accord with its actual theory of culpability and the manner in which it tried and argued the case. Holcomb's claim fails.[12]

Reversed with instructions to dismiss without prejudice.

We concur:

_____

_____     _____

---

[12] In his appellate briefing, Holcomb assigns error to the trial court's denial of his motion to arrest the judgment. However, he does not offer legal authority or analysis to support this alleged error. Accordingly, we do not consider it.

Holcomb also argues that mandatory joinder rules make it too late for the State to "charge another crime." In so doing, he completely misses the point. Only one crime is at issue—interfering with the reporting of domestic violence. Adding a particular and necessary fact to the information (that assault in the fourth degree is the underlying domestic violence crime that the State will seek to prove was committed) does not charge an additional—or different—crime. There is no joinder—mandatory or otherwise.

Because of the manner in which we resolve this appeal, we need not address any of the other issues raised in the briefing.