# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                Respondent,<br><br>      v.<br><br>TODD ALLEN OLSON,<br><br>                Appellant. | No. 77396-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: July 29, 2019 |

APPELWICK, C.J. — Olson appeals his conviction for felony DUI. He argues that the State failed to prove beyond a reasonable doubt an alternative means of committing felony DUI, thereby violating his right to an expressly unanimous jury verdict. And, he contends that the trial court miscalculated his offender score. We affirm Olson's conviction, but remand to the trial court for resentencing consistent with this opinion.

## FACTS

On December 31, 2015, at 9:50 p.m., Deputy John Hendrickson conducted a traffic stop on a pickup truck driven by Todd Olson. The truck had started to cross the center line on the road, and had driven westbound in an eastbound lane for a short distance. As Hendrickson walked up to Olson's truck and peered inside, he immediately smelled alcohol. He also observed that Olson had bloodshot eyes, heavy eyelids, and fumbled as he reached for his wallet.

Hendrickson asked Olson if he had been drinking, and Olson denied that he had. When Hendrickson asked him again, Olson stated that he may have had a drink or two. Hendrickson then asked Olson to step out of his vehicle so that he could conduct field sobriety tests. Olson agreed to the tests. As he stepped out of his vehicle, he was uneasy on his feet and used the truck to assist his balance.

Hendrickson first offered Olson the horizontal gaze nystagmus test, which involves holding up a pen or finger and asking the defendant to track it with their eyes. The test confirmed that Olson had consumed alcohol. Hendrickson then had Olson perform two more field sobriety tests that he performed poorly on. Last, Hendrickson had Olson complete a portable breath test. He then placed Olson under arrest and transported him to the sheriff's office.

Once Hendrickson and Olson arrived at the sheriff's office, Olson refused to take a breath test. Hendrickson then started a 15 minute observation period of Olson. During that time, Olson stated that, two hours prior, he had taken the prescription drug codeine, a muscle relaxer. He also stated that he had three short beers that evening, starting around 5:00 p.m. When the observation period ended, Olson again refused to take a breath test. Hendrickson then turned him over to the booking deputy, and obtained a search warrant for his blood.

After Hendrickson obtained the warrant, he gathered blood vials from the evidence room and transported Olson to the hospital for a blood draw. At 12:45 a.m. the next morning, he watched a phlebotomist at the hospital draw Olson's blood. The vials were then returned to Hendrickson. He entered the vials into evidence, and requested that Olson's blood be tested by the toxicology lab. The

test showed a blood alcohol concentration (BAC) of "0.23 grams per 100 milliliters."[1]

On January 6, 2016, the State charged Olson with felony driving under the influence (DUI). Asa Louis, a scientist at the Washington State Patrol Toxicology Lab, testified to testing Olson's blood. Louis was asked whether an individual's BAC would continue to go up or come down if initial contact was made with that person at 10:00 p.m., and that person's blood was collected at 12:45 a.m. He explained,

> If we have a test that is conducted here, and we try to determine if that person at two and a half three quarter [sic] hours earlier[,] whether they are still going up or coming down[,] I can't tell you that definitively because we need to know when that person had their last drink. So if we are going back, again, if we, let's say, generously say this is one hour, at one hour that person is going to peak. After which without re-dosing [alcohol] they are going to come down. So an hour previous it would be consistent with that person still coming down. Two hours previous it's likely that person was coming down but [we] don't know for sure because, again, the further we go without knowing [when] that last drink was we can't say definitively. But we do know typically that after an hour that person is on the down slope.

A jury found Olson guilty as charged. It also found by special verdict that he had a BAC of 0.15 or higher within 2 hours of driving.

At Olson's sentencing, the State argued that Olson's 10 previous DUIs dating back to 1991 counted in calculating his offender score, because he lacked any five year period without a criminal conviction after those cases were resolved. As a result, the State calculated his offender score as an 11. Olson did not dispute the previous convictions, but argued that the applicable DUIs would only go back

---

[1] Olson's blood sample also showed a tetrahydrocannabinol (THC) concentration of "1.0 nanograms per milliliter."

10 years. The trial court calculated his offender score as a 9 plus, and sentenced him to 60 months of confinement. It also ordered that any early release be converted to community custody time. Olson's judgment and sentence included 12 months of community custody. Olson appeals.

DISCUSSION

Olson makes two arguments. First, he argues that the State failed to prove beyond a reasonable doubt a per se violation of the DUI statute, thereby violating his right to an expressly unanimous jury verdict. Second, he argues that the trial court miscalculated his offender score.

I.   Sufficiency of Evidence

Olson argues first that the trial court violated his right to an expressly unanimous jury verdict, because the evidence is insufficient to support that he committed a per se violation of the DUI statute.

The sufficiency of the evidence is a question of constitutional law that we review de novo. State v. Rich, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). Evidence is sufficient to support a conviction if, when viewed in the light most favorable to the State, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." Id. Circumstantial and direct evidence are equally reliable. State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). This court defers to the trier of fact on issues

of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. State v. Hernandez, 85 Wn. App. 672, 675, 935 P.2d 623 (1997).

In Washington, criminal defendants have a constitutional right to a unanimous jury verdict. WASH. CONST. art I, § 21; State v. Ortega-Martinez, 124 Wn.2d 702, 707, 881 P.2d 231 (1994). "This right may also include the right to a unanimous jury determination as to the means by which the defendant committed the crime when the defendant is charged with (and the jury is instructed on) an alternative means crime." State v. Owens, 180 Wn.2d 90, 95, 323 P.3d 1030 (2014).

Alternative means statutes identify a single crime and provide more than one means of committing the crime. State v. Williams, 136 Wn. App. 486, 497, 150 P.3d 111 (2007). The DUI statute includes alternative means of committing the crime. See former RCW 46.61.502(1)(a)-(c) (2013). Consistent with the information, the trial court instructed the jury that, to convict Olson of felony DUI, it had to find beyond a reasonable doubt that he committed felony DUI by one of three alternative means:

> (2) That the defendant at the time of driving a motor vehicle
> (a) was under the influence of or affected by intoxicating liquor, marijuana, or any drug; or
> (b) was under the combined influence of or affected by intoxicating liquor, marijuana, or any drug; or
> (c) had sufficient alcohol in his body to have an alcohol concentration of 0.08 or higher within two hours of driving as shown by an accurate and reliable test of the defendant's blood.

The instruction further provided that "the jury need not be unanimous as to which of alternatives (2)(a), (2)(b), or (2)(c) has been proved beyond a reasonable doubt,

as long as each juror finds that at least one alternative in paragraph (2) has been proved beyond a reasonable doubt."

When there is sufficient evidence to support each of the charged alternative means of committing the crime, express jury unanimity as to which means is not required. Owens, 180 Wn.2d at 95. "If, however, there is insufficient evidence to support any means, a particularized expression of jury unanimity is required." Id.

Olson argues that the State failed to prove beyond a reasonable doubt alternative (2)(c)—that his BAC was 0.08 or higher within 2 hours of driving. He asserts that the State did not present any direct evidence of his BAC during the two hours after he stopped driving. Specifically, he points out that his blood draw did not occur until 12:45 a.m. the next morning, nearly three hours after he had stopped driving.

Hendrickson stopped Olson in his pickup truck at 9:50 p.m. Olson's blood draw occurred at 12:45 a.m. His BAC at that time was 0.23. Louis testified that, typically, a person's BAC will peak about 30 to 45 minutes after they have completed their dosing of alcohol. While he could not state definitively whether Olson's BAC was still going up or coming down at the time of his blood draw, he explained, "[W]e do know typically that after an hour [without re-dosing] that person is on the down slope." During Hendrickson's observation of Olson after his arrest, Olson stated that he had not consumed any alcohol since being arrested.

There is no requirement that a defendant's blood sample be taken within 2 hours of driving to prove that the defendant had a BAC of at least 0.08. In fact, under former RCW 46.61.502(4)(a), "[a]nalyses of blood or breath samples

6

obtained more than two hours after the alleged driving may be used as evidence that within two hours of the alleged driving, a person had an alcohol concentration of 0.08 or more."

Based on the evidence in this case, a jury could infer that, one hour after Olson's arrest, his BAC started coming down because he had not consumed any more alcohol. Olson's arrest occurred sometime between 9:50 p.m. and 10:50 p.m.[2] Olson had a BAC of 0.23 nearly three hours after driving. As a result, a jury could infer that, within 2 hours of driving, his BAC was at least 0.23, if not higher. Accordingly, the evidence is sufficient to establish that Olson had a BAC of 0.08 or higher within 2 hours of driving.[3]

## II. Offender Score

Olson argues second that the trial court miscalculated his offender score. He contends that only his 2008 felony DUI conviction should have been included in calculating his offender score. The State concedes that remand for resentencing is required, because Olson's criminal history "was presented only in a summary fashion at the trial court."

---

[2] Hendrickson testified that, after Olson's arrest and during his observation period at the sheriff's office, it was 10:50 p.m.

[3] Olson also argues that the State failed to prove beyond a reasonable doubt that his BAC was 0.15 or higher within 2 hours of driving. He asserts that the State did not present any direct evidence of his BAC during the two hours after he stopped driving. Again, there is no requirement that a defendant's blood sample be taken within 2 hours of driving to prove that the defendant had a BAC of at least 0.08. A jury could infer from the evidence in this case that Olson's BAC was at least 0.23, if not higher, within 2 hours of driving. Thus, the evidence is sufficient to establish that his BAC was 0.15 or higher within 2 hours of driving.

This court reviews the calculation of an offender score de novo. State v. Howell, 102 Wn. App. 288, 292, 6 P.3d 1201 (2000). Under RCW 9.94A.525, calculating an offender score involves three steps: "(1) identify all prior convictions; (2) eliminate those that wash out; (3) 'count' the prior convictions that remain in order to arrive at an offender score." State v. Moeurn, 170 Wn.2d 169, 175, 240 P.3d 1158 (2010). The State has the burden to prove prior convictions at sentencing by a preponderance of the evidence. State v. Hunley, 175 Wn.2d 901, 909-10, 287 P.3d 584 (2012). "Bare assertions, unsupported by evidence, do not satisfy the State's burden to prove the existence of a prior conviction." Id. at 910.

At Olson's September 2017 sentencing, the State provided a criminal history statement to the trial court. According to the statement, Olson's most recent crime, felony DUI, occurred in 2008. Olson did not dispute the 11 convictions listed in the statement, but argued that the applicable DUIs, for purposes of scoring, would go back only 10 years.

The criminal history statement listed the dates of each crime, the sentencing court, whether Olson was an adult or juvenile, and the type of crime. The statement did not include the dates of entry of judgment and sentence for each crime, whether Olson was confined for each crime, and, if so, the dates of his release from confinement. The trial court calculated Olson's offender score as a 9 plus. It included nine nonfelony DUIs dating back to 1991.

Former RCW 9.94A.525(2)(e) (2013) provides in part:

> If the present conviction is felony driving while under the influence of intoxicating liquor or any drug . . . all predicate crimes for the offense . . . shall be included in the offender score, and prior convictions for

felony driving while under the influence of intoxicating liquor or any drug . . . shall always be included in the offender score. All other convictions of the defendant shall be scored according to this section.

Thus, the trial court was required to include Olson's 2008 felony DUI conviction in calculating his offender score.

Under former RCW 9.94A.525(2)(d),

Except as provided in (e) of this subsection, serious traffic convictions shall not be included in the offender score if, since the last date of release from confinement (including full-time residential treatment) pursuant to a conviction, if any, or entry of judgment and sentence, the offender spent five years in the community without committing any crime that subsequently results in a conviction.

"Serious traffic offense[s]" include nonfelony DUIs. Former RCW 9.94A.030(44)(a) (2012).

According to the statement of criminal history, Olson's most recent crime occurred in 2008. But, the statement does not show the date of entry of judgment and sentence for that crime, whether Olson was confined for that crime, and, if so, the date of his release. The parties do not cite to this information in the record. Thus, we do not know if Olson spent five years in the community without committing any crime that resulted in a conviction. As a result, we cannot determine whether his nonfelony DUI convictions must be included in calculating his offender score. Therefore, we remand to the trial court for resentencing.[4] On

---

[4] Olson also argues that the trial court exceeded its statutory authority in sentencing him to 60 months of confinement and 12 months of community custody. In January 2016, when Olson was charged, felony DUI was a class C felony, with a statutory maximum of 60 months. RCW 9A.20.021(1)(c); former RCW 46.61.502 (2013). Whenever an offender's standard range term of confinement in combination with the term of community custody exceeds the statutory maximum for the crime, the term of community custody must be reduced by the trial court. RCW 9.94A.701(9). The State concedes that the trial court must reduce Olson's

9

resentencing, the trial court should determine if, since Olson's last date of release from confinement pursuant to a conviction, if any, or entry of judgment and sentence, he spent five years in the community without committing any crime.

We affirm Olson's conviction, but remand to the trial court for resentencing consistent with this opinion.

_Appelwick, C.J._

WE CONCUR:

_Smith, J._                    _Andrus, J._

---

term of community custody. Accordingly, we remand to the trial court to resentence Olson consistent with RCW 9.94A.701(9).