
# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 75673-7-I |
| | ) | |
| Respondent, | ) | |
| | ) | ORDER DENYING MOTION |
| v. | ) | FOR RECONSIDERATION |
| | ) | AND WITHDRAWING AND |
| MAURICIO GARCIA GOMEZ, | ) | SUBSTITUTING OPINION |
| | ) | |
| Appellant. | ) | |

Appellant Mauricio Garcia Gomez filed a motion for reconsideration of the opinion filed on September 17, 2018. Respondent State of Washington filed an answer to the motion. The panel has determined that the motion for reconsideration should be denied but the opinion filed on September 17, 2018 withdrawn and a substitute opinion filed to amend page 12 as follows:

The first sentence of the last paragraph on page 12 states:

> Even though this is an assault in the second degree alternative means case, the court decided and the defense agreed to give a <u>Petrich</u> instruction.

The sentence of the last paragraph on page 12 shall be replaced and amended as follows:

> Here, the court decided and the defense agreed to give a <u>Petrich</u> instruction.

Now, therefore, it is hereby

ORDERED that appellant's motion for reconsideration is denied and the opinion filed on September 17, 2018 shall be withdrawn and a substitute opinion amending the first sentence of the last paragraph on page 12 shall be filed.

DATED this _5th_ day of February 2019.

_Schindler, J_

_Mann, Acj_

_Leach, J._


IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 75673-7-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| MAURICIO GARCIA GOMEZ, | ) | |
| | ) | |
| Appellant. | ) | FILED: February 5, 2019 |

SCHINDLER, J. — Assault in the second degree is an alternative means crime. The State charged Mauricio Garcia Gomez with two counts of assault in the second degree committed by three alternative means: intentional assault inflicting substantial bodily harm, or assault with a deadly weapon, or assault by strangulation. Consistent with well established case law, the jury instructions state the jury must agree unanimously on the crime of assault in the second degree but need not be unanimous as to which of the alternative means has been proved beyond a reasonable doubt. Garcia Gomez appeals the jury convictions on the two counts of assault in the second degree. Garcia Gomez contends he was deprived of his constitutional right to a unanimous jury verdict because sufficient evidence does not support each of the charged alternative means to commit assault in the second degree. In the alternative, Garcia Gomez argues that if the jury was not unanimous as to the alternative means, the convictions violate his right to due process. In a supplemental assignment of error,

Garcia Gomez claims the statutory alternative means to commit assault in the second degree are alternative crimes, not alternative means. Because overwhelming and unrebutted evidence supports each of the charged means of committing assault in the second degree and the assault statute lists alternative means of proving a single crime, not alternative crimes, we affirm the jury convictions.

## FACTS

After interviewing 13-year-old I.G. at school on October 28, 2015, Kent Police Detective Melanie Robinson went to the apartment complex where the family lived to meet with his mother C.G. C.G. had black bruises under her eyes, an "obviously disfigured" nose, and a "cauliflowered" ear. C.G. showed Detective Robinson a "long scar" on her arm and "large bruises" on her legs. Detective Robinson took photographs of the injuries to C.G. The police arrested Mauricio Garcia Gomez that day. After his arrest, C.G. went to the Valley Medical Center emergency room.

The State charged Garcia Gomez with two counts of assault in the second degree. The information alleged as to each count that Garcia Gomez committed domestic violence assault in the second degree "between September 1, 2015 and October 30, 2015" by three alternative means: intentionally assaulting C.G. "with a deadly weapon, to-wit: a knife," or intentionally assaulting C.G. "thereby recklessly inflicting substantial bodily harm," or assaulting C.G. "by strangulation." The information alleged the aggravating factors of domestic violence; that the offense was a part of an ongoing pattern of psychological, physical, or sexual abuse of the victim; multiple incidents over a prolonged period of time; and that Garcia Gomez committed domestic violence "within sight or sound of the . . . minor children" in violation of RCW 9.94A.535(3)(h)(i) and (ii).

2

Garcia Gomez pleaded not guilty. The trial court agreed to bifurcate the trial on the two counts of assault in the second degree and the aggravating factors.

A number of witnesses testified during the trial on the two counts of assault in the second degree, including C.G., I.G., the apartment manager, and Dr. Russell Spies. The court admitted into evidence the photographs Detective Robinson took of C.G. on October 28 and the whip Garcia Gomez used to hit C.G. on her legs. The defense did not call any witnesses.

C.G. testified that in the fall of 2015, she and Garcia Gomez lived in a two-bedroom apartment in Kent with their five children, ranging from age 2 to 13. C.G. testified the injuries inflicted by Garcia Gomez occurred at "different times" in September and October 2015.

C.G. testified that Garcia Gomez hit her "mainly at home. . . . [P]retty much whenever he felt like it." C.G. said that approximately two weeks before the police arrested Garcia Gomez, he walked into the kitchen and punched her in the nose. C.G. testified Garcia Gomez punched her so hard that her vision became "blurry" and her nose was bleeding heavily. C.G. thought her nose was broken. Her nose had a "[d]ifferent structure" after Garcia Gomez punched her and the swelling made it difficult to breathe.

C.G. testified that in September or October 2015, Garcia Gomez punched her in her right ear. Because he would repeatedly slap and punch her on the right side of her face and ear in the days that followed, the swelling never healed. C.G. testified the swelling in her ear hurt, "[e]ven when he wasn't hitting it."

C.G. testified that during the same time period, Garcia Gomez made a whip with electrical cords. Although C.G. was wearing jeans, the injuries he inflicted using the

3

whip "burned" for days and left marks on her legs.

C.G. testified that another time in September or October, Garcia Gomez grabbed her "around the neck" with both hands while she was in bed. Garcia Gomez stood over her and tightened his grip so hard she was unable to breathe.

On another occasion in September or October while C.G. was driving, Garcia Gomez suddenly sliced her right arm with the blade of a pocketknife. The cut "burned" and bled. C.G. did not know why Garcia Gomez cut her. "He just said it just felt right to do it." C.G. showed the jury the scar on her arm.

C.G. testified that she did not report the abuse or seek treatment for her injuries until after the police arrested Garcia Gomez. C.G. said she was "scared" the doctors would "ask[ ] questions" about "how . . . those injuries happened."

Thirteen-year-old I.G. testified that in September and October 2015, his father physically abused his mother usually "twice every day," typically "in the bedroom and sometimes in the living room" of the apartment. I.G. testified that a couple of times, he heard his mother "screaming . . . painful sounds." I.G. testified that his mother had bruises on her "face," "legs," and "feet" and that her "nose got cracked." I.G. testified he did not "see those bruises before the fighting . . . , it happened after the fighting." I.G. testified that when he heard "fighting . . . in their bedroom[,] . . . [m]y brothers and sisters" were also in the apartment.

I.G. saw Garcia Gomez use "his hands on my mom." I.G. described a time in September or October when he saw his father punch his mother "on the face" while she was driving. I.G. testified that his father would climb on top of his mother on the sofa in the living room and punch her. I.G. testified he "couldn't" call the police because he was "scared . . . [t]o make things worse."

4

The manager of the apartment complex testified that during September and October 2015, she noticed C.G.'s "significant weight loss." On more than one occasion and at "different times," the manager saw that C.G. had "black eyes" and bruises on her face and arms.

Dr. Spies examined C.G. on October 28. The severe pain in her neck and left shoulder radiated down her arm and caused numbness in her hand for more than a week. Dr. Spies testified C.G. suffered nerve damage between her neck and hand, likely from a "disc injury." Dr. Spies testified blunt force trauma to the right side of the face can "impact the nerves on the left neck[.] . . . Like whiplash."

Dr. Spies testified that the area around C.G.'s right eye was "discolored" and swollen. Breathing through her nose was difficult and painful. Dr. Spies testified her nose was visibly misshapen from either a deviated septum or a fracture, "or both," and surgery was necessary to repair her nasal passages. Dr. Spies said C.G. suffered from a "markedly" "large subchondral hematoma" in her right ear, a deformity known as "cauliflower ear."[1] Because the injury to her ear was not treated right away, the deformity was likely permanent. Dr. Spies testified the black eye, broken nose, and deformed ear injuries were consistent with blunt force trauma.

The court instructed the jury the State had the burden of proving each of the elements of the crime of assault in the second degree beyond a reasonable doubt. Jury instruction 7 states, "A separate crime is charged in each count. You must decide each count separately. Your verdict on one count should not control your verdict on any other count." The court instructed the jury that "[a] person commits the crime of assault

---

[1] "Cauliflower ear" is associated with "repeated blows in boxing." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 355 (2002).

5

in the second degree when he or she intentionally assaults another and thereby recklessly inflicts substantial bodily harm or assaults another with a deadly weapon or assaults another by strangulation."

Because C.G. testified to three different acts of intentional assault (punching C.G. in the nose, repeatedly hitting her in the ear, and using the whip to hit her), the court proposed giving a Petrich[2] unanimity instruction. The defense agreed the court should give the instruction. Jury instruction 16 states:

> The State alleges that the defendant committed acts of assault in the second degree on multiple occasions. To convict the defendant on any count of assault in the second degree, one particular act of assault in the second degree must be proved beyond a reasonable doubt, and you must unanimously agree as to which act has been proved. You need not unanimously agree that the defendant committed all the acts of assault in the second degree.

The "[t]o convict" jury instruction states the jury must unanimously agree that Garcia Gomez committed the crime of assault in the second degree but need not unanimously agree on the alternative means. The to-convict jury instruction on count 1 states:

> To convict the defendant of the crime of assault in the second degree, as charged in Count 1, separate and distinct from count 2, each of the following two elements of the crime must be proved beyond a reasonable doubt:
> 1)    That on or about September 1, 2015 through October 30, 2015, the defendant:
>       a)  intentionally assaulted [C.G.] and thereby recklessly inflicted substantial bodily harm; or
>       b)  assaulted [C.G.] with a deadly weapon; or
>       c)  assaulted [C.G.] by strangulation; and
> 2)    That this act occurred in the State of Washington.
> If you find from the evidence that element (2) and either alternative element (1)(a) or (1)(b) or (1)(c) have been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty. To return a verdict of guilty, the jury need not be unanimous as to which of

---

[2] State v. Petrich, 101 Wn.2d 566, 683 P.2d 173 (1984).

alternatives (1)(a) or (1)(b) or (1)(c) has been proved beyond a reasonable doubt, as long as each juror finds that either (1)(a) or (1)(b) or (1)(c) has been proved beyond a reasonable doubt.

On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to either element (1) or (2), then it will be your duty to return a verdict of not guilty as to Count 1.[3]

The to-convict instruction on count 2 is the same except for the first paragraph that states, "To convict the defendant of the crime of assault in the second degree, as charged in Count 2, separate and distinct from count 1, each of the following two elements of the crime must be proved beyond a reasonable doubt"; and the last sentence that states, "[T]hen it will be your duty to return a verdict of not guilty as to Count 2."

The jury found Garcia Gomez was guilty of the two counts of assault in the second degree. After the jury returned the verdicts, the State presented evidence on the aggravating factors.

C.G. testified about verbal and emotional abuse that escalated to physical abuse beginning in 2011. C.G. said Garcia Gomez forced her to have sex. If C.G. said "no," Garcia Gomez would "get angry" and yell at her or push her. C.G. testified that in 2011, the police arrested Garcia Gomez for domestic violence assault against her. C.G. said the physical abuse began "really increasing" in mid-2015. C.G. testified Garcia Gomez physically assaulted her in 2015 "more than 100" times.

C.G. said the children were often in the apartment or the car when Garcia Gomez attacked her. C.G. testified that when Garcia Gomez used the whip to hit her, the children "were all sitting in the living room" near her and screamed at Garcia Gomez "to not do it."

---

[3] Emphasis added.

7

By special verdict, the jury found Garcia Gomez and C.G. were household members, the two counts of assault in the second degree were part of an ongoing pattern of abuse, and Garcia Gomez committed the crimes when the children were present.

At sentencing, the court described the domestic violence assaults against C.G. as "horrific."

> Mr. Garcia-Gomez, this — this Court, unfortunately, sees a lot of cases involving allegations of domestic violence and abuse. Your case was one of the most horrific that I've seen in almost 12 years on the bench. You treated your wife, the mother of your children, in a way that our society does not allow someone to treat their dog, and you did it in front of your children. And even to — just now you don't seem to have any comprehension of why what you did was so horrific and what effect it had on your family, the people who loved you and trusted you to protect them, to help take care of them, to comfort them when they were hurt. And instead you were the one inflicting the hurt.
>
> Every time you lost your temper, you lashed out physically. You broke bones. You made a whip. . . .
>
> . . . .
>
> . . . [I]t's clear, Ms. Garcia is still terrified of you, and I suspect your children are frightened as well. They love you, but they're scared of you too, and that's a terrible place for a child to be.

The court imposed an exceptional sentence of 96 months on each count to run concurrently. The court entered findings of fact and conclusions of law on the exceptional sentence. The court incorporated by reference its oral ruling.

The findings state, "A unanimous jury found the defendant guilty of two counts of Assault in the Second Degree - Domestic Violence" and "the same jury unanimously found" the State proved the aggravating factors.

> The unrebutted testimony by [C.G.] was that the defendant had been physically and sexually abusive toward her in an escalating pattern since at least 2011-2015, a period of four or five years. She additionally testified that the physical and sexual abuse got much worse in the summer of 2015.

The conclusions of law state the record "contains substantial evidence to support the imposition of an exceptional sentence under each of the aggravating factors found by the jury." But "[e]ither factor, standing alone, justifies an exceptional sentence above the standard range."

## ANALYSIS

### Jury Unanimity

Garcia Gomez seeks reversal of the convictions of assault in the second degree. Garcia Gomez contends he was deprived of his constitutional right to a unanimous jury verdict because insufficient evidence supports each of the charged means of committing assault in the second degree. Under article I, section 21 of the Washington Constitution, a criminal defendant has the right to a unanimous jury. State v. Armstrong, 188 Wn.2d 333, 340, 394 P.3d 373 (2017); State v. Owens, 180 Wn.2d 90, 95, 323 P.3d 1030 (2014).[4]

"In enacting criminal statutes, the legislature may articulate a set of prohibited behaviors as (1) a list of distinct offenses or (2) a single offense with one or more alternative means." State v. Woodlyn, 188 Wn.2d 157, 163, 392 P.3d 1062 (2017).

Assault in the second degree is an alternative means crime. "The second degree assault statute, RCW 9A.36.021, articulates a single criminal offense" with "seven separate subsections defining how the offense may be committed." State v. Fuller, 185 Wn.2d 30, 34, 367 P.3d 1057 (2016); see also State v. Smith, 159 Wn.2d 778, 784, 154 P.3d 873 (2007).

---

[4] The Sixth Amendment to the United States Constitution does not require jury unanimity in state criminal cases. Apodaca v. Oregon, 406 U.S. 404, 406, 92 S. Ct. 1628, 32 L. Ed. 2d 184 (1972).

RCW 9A.36.021(1) provides, in pertinent part:

A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree:

(a) Intentionally assaults another and thereby recklessly inflicts substantial bodily harm; or

(b) Intentionally and unlawfully causes substantial bodily harm to an unborn quick child by intentionally and unlawfully inflicting any injury upon the mother of such child; or

(c) Assaults another with a deadly weapon; or

(d) With intent to inflict bodily harm, administers to or causes to be taken by another, poison or any other destructive or noxious substance; or

(e) With intent to commit a felony, assaults another; or

(f) Knowingly inflicts bodily harm which by design causes such pain or agony as to be the equivalent of that produced by torture; or

(g) Assaults another by strangulation or suffocation.[5]

The State charged Garcia Gomez with two counts of assault in the second degree committed by three alternative means in violation of RCW 9A.36.021(1)(a), (c), and (g): intentional assault recklessly inflicting substantial bodily harm, or assault with a deadly weapon, or strangulation.

The Washington Supreme Court precedent "addressing alternative means crimes requires unanimity as to means only when a general verdict raises due process concerns, i.e., when one or more alternatives presented to the jury are not supported by sufficient evidence." Woodlyn, 188 Wn.2d at 162.

In Woodlyn, the court rejected the argument that the " 'constitutional right to jury unanimity applies to alternative means of committing the crime.' " Woodlyn, 188 Wn.2d at 163. The court held:

We have never recognized a categorical right to express unanimity (i.e., unanimity as to means) in alternative means convictions. See [State v. ]Arndt, 87 Wn.2d [374,] 377-78[, 553 P.2d 1328 (1976)]; [State v. ] Franco, 96 Wn.2d [816,] 823[, 639 P.2d 1320 (1982), abrogated on other

---

[5] In 2007, the legislature enacted subsection (g) to add "strangulation" as a means of committing assault in the second degree. LAWS OF 2007, ch. 79, § 2. In 2011, the legislature amended subsection (g) to include "suffocation." LAWS OF 2011, ch. 166, § 1.

grounds by State v. Sandholm, 184 Wn.2d 726, 736, 364 P.3d 87 (2015)]; [State v. ]Whitney, 108 Wn.2d [506,] 511[, 739 P.2d 1150 (1987)]. Rather, there are particular situations when express unanimity is required, specifically when at least one means lacks sufficient evidentiary support. See, e.g., Owens, 180 Wn.2d at 95. Washington cases have adopted an analysis that turns on the sufficiency of evidence as a due process concern: if the jury is instructed on one or more alternative means that are not supported by sufficient evidence, a "particularized expression" of jury unanimity as to the supported means is required. [Owens, 180 Wn.2d at 95.] The purpose of this requirement is to ensure that when a verdict might be based on more than one alternative, the verdict is adequately supported.

Woodlyn, 188 Wn.2d at 164.

Accordingly, if sufficient evidence supports each alternative means, "Washington defendants do not enjoy a recognized right to express unanimity." Woodlyn, 188 Wn.2d at 164; Armstrong, 188 Wn.2d at 347 ("We have held for more than 75 years that jury unanimity as to means is not required in alternative means cases where substantial evidence supports both alternatives.").

Garcia Gomez contends sufficient evidence does not support the convictions because the jury instructions state the jury must agree on a particular act of assault but do not require the jury to unanimously agree on the charged means of committing the crime of assault in the second degree. As an example, Garcia Gomez argues that if the jury agreed he assaulted C.G. intentionally by either punching her in the nose, repeatedly hitting her ear, or whipping her with electrical cords, insufficient evidence supports the alternative means of committing assault with a deadly weapon or by strangulation. The premise of his argument is contrary to well established Supreme Court precedent.

"In an alternative means case, where a single offense may be committed in more than one way, there must be jury unanimity as to guilt for the single crime charged."

11

State v. Kitchen, 110 Wn.2d 403, 410, 756 P.2d 105 (1988).[6] But if "substantial evidence supports each alternative means," jury unanimity is not required "as to the means by which the crime was committed." Kitchen, 110 Wn.2d at 410;[7] Armstrong, 188 Wn.2d at 339 (express jury unanimity is not required "so long as sufficient evidence supports each charged means"). Evidence is sufficient if after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Owens, 180 Wn.2d at 99.

In Woodlyn and Armstrong, the Washington Supreme Court expressly rejected the argument that jury unanimity was required as to the means of committing the crime. Woodlyn, 188 Wn.2d at 163; Armstrong, 188 Wn.2d at 343 (rejecting claim that lack of express unanimity is permissible only where the record allows the court to "infer" unanimity).

In contrast to an alternative means crime, in a multiple acts case, several acts are alleged, any one of which could constitute the crime charged. Kitchen, 110 Wn.2d at 411. Because "the jury must be unanimous as to which act or incident constitutes the crime" in a multiple acts case, the court must give a Petrich unanimity jury instruction. Kitchen, 110 Wn.2d at 411.

Here, the court decided and the defense agreed to give a Petrich instruction.[8] The jury unanimously agreed Garcia Gomez was guilty of two counts of assault in the second degree. The overwhelming and unrebutted evidence supports the jury finding

---

[6] Emphasis in original.

[7] Emphasis in original.

[8] We also note, "Under the invited error doctrine, a defendant may not request that instructions be given to the jury" and then raise a constitutional challenge for the first time on appeal. State v. Aho, 137 Wn.2d 736, 744-45, 975 P.2d 512 (1999); State v. Hood, 196 Wn. App. 127, 131-32, 382 P.3d 710 (2016), review denied, 187 Wn.2d 1023, 390 P.3d 331 (2017).

guilt beyond a reasonable doubt not only as to each act of assault but also as to each of the charged alternative means for the two counts of committing assault: intentional assault recklessly inflicting substantial bodily harm, or assault with a deadly weapon, or strangulation.

In the alternative, Garcia Gomez contends that if the jury was not unanimous as to the means, the convictions violate due process. Garcia Gomez claims that because the alternative means of assault by reckless infliction of substantial bodily harm, assault with a deadly weapon, and assault by strangulation are factually distinct, the jury had to be unanimous as to the particular means.

Garcia Gomez relies on the language in State v. Ortega-Martinez, 124 Wn.2d 702, 707, 881 P.2d 231 (1994), that states, "In certain situations, the right to a unanimous jury trial also includes the right to express jury unanimity on the means by which the defendant is found to have committed the crime."[9] In Armstrong, the Washington Supreme Court rejected the language Garcia Gomez relies on as dicta that is both "unnecessary to the holding in Ortega-Martinez and unsupported by the cases it cited." Armstrong, 188 Wn.2d at 342.

Garcia Gomez cites Arndt and State v. Crane, 116 Wn.2d 315, 804 P.2d 10 (1991). Neither Arndt nor Crane supports his argument that the charged alternative means of committing assault in the second degree are "repugnant to each other." Arndt, 87 Wn.2d at 383.[10]

In Arndt, the court describes the analytical framework to determine whether a statute creates separate crimes or identifies a single crime with more than one means of

---

[9] Emphasis in original.
[10] Emphasis omitted.

committing the crime. The court must determine legislative intent by considering " '[1] the title of the act; [2] whether there is a readily perceivable connection between the various acts set forth; [3] whether the acts are consistent with and not repugnant to each other; [4] and whether the acts may inhere in the same transaction.' " Arndt, 87 Wn.2d at 379[11] (quoting State v. Kosanke, 23 Wn.2d 211, 213, 160 P.2d 541 (1945)). The court held that where "there is substantial evidence presented to support each of the alternative means, and the alternative means are not repugnant to one another, unanimity of the jury as to the mode of commission is not required." Arndt, 87 Wn.2d at 376.

Arndt supports the conclusion that RCW 9A.36.021(1) sets forth alternative means of committing a single crime, and it is therefore "unnecessary to a guilty verdict that there be more than unanimity concerning guilt as to the single crime charged." Arndt, 87 Wn.2d at 377. Further, the alternative means of committing assault in the second degree are not repugnant to each other. Proof of assault in the second degree under one subsection does not disprove assault in the second degree under another subsection. Arndt, 87 Wn.2d at 383.

In Crane, the Washington Supreme Court draws the distinction between an alternative means crime where "a single offense may be committed in more than one way" and the jury must be unanimous "as to guilt for the single crime charged," and a multiple acts case where several acts are alleged, "any one of which could constitute the crime charged." Crane, 116 Wn.2d at 325. The court held an alternative means crime "usually involve[s] a charge under a statute which contains several alternative

---

[11] Alterations in original.

ways of committing one crime, and the defendant has been charged with conduct which may fulfill more than one alternative." Crane, 116 Wn.2d at 326.

In Crane, the State charged the defendant with one count of murder in the second degree and two counts of assault in the second degree. Crane, 116 Wn.2d at 321. The evidence showed "the fatal assault could only have occurred during a 2-hour span." Crane, 116 Wn.2d at 330. On appeal, the defendant argued the trial court violated his constitutional right to unanimity by refusing to instruct the jury on the need to agree unanimously "to at least one particular assault" that caused the death of the child. Crane, 116 Wn.2d at 324. Because the evidence showed the "continuous conduct" exception to the Petrich rule applied, the court held a "unanimous jury verdict would not be required as to each incident of assault during this short period of time; instead, the jury would only need to be unanimous in its determination that the conduct occurred." Crane, 116 Wn.2d at 330 (citing Petrich, 101 Wn.2d at 571). "Petrich requires an election or unanimity instruction in cases where evidence supports several criminal acts which would support conviction of a criminal offense." Crane, 116 Wn.2d at 330.[12]

In supplemental briefing, Garcia Gomez asserts his right to due process was violated because the charged alternative means of committing assault in the second degree constitute separate offenses. Due process requires the State to prove every element of a crime beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364, 90 S.

---

[12] (Emphasis in original.) Garcia Gomez also cites State v. Peterson, 168 Wn.2d 763, 230 P.3d 588 (2010). The statute in Peterson is not analogous to the second degree assault statute. In Peterson, the Supreme Court concluded failure to register under former RCW 9A.44.130 (2003) is not an alternative means crime. Peterson, 168 Wn.2d at 770. The court held the statute prohibits the single act of moving without providing notice to appropriate authorities. The different deadlines for the provision of notice based on an offender's residential status did not create alternative means. Peterson, 168 Wn.2d at 769-70.

Ct. 1068, 25 L. Ed. 2d 368 (1970); State v. Borrero, 147 Wn.2d 353, 364, 58 P.3d 245 (2002).

We reject his argument on a number of grounds. Assault in the second degree is an alternative means crime. The statute lists alternative ways of proving the single offense of assault in the second degree, not separate crimes. Fuller, 185 Wn.2d at 34. Although Garcia Gomez relies on the dissent in Armstrong, we are bound by the majority opinion. State v. Gore, 101 Wn.2d 481, 486-87, 681 P.2d 227 (1984). The other cases Gomez Garcia cites, Schad v. Arizona, 501 U.S. 624, 111 S. Ct. 2491, 115 L. Ed. 2d 555 (1991), and Richardson v. United States, 526 U.S. 813, 119 S. Ct. 1707, 143 L. Ed. 2d 985 (1999), do not support his argument.

In Schad, a plurality of the United States Supreme Court concluded that when a statute enumerates alternative means, whether jurors must be unanimous with respect to a particular means depends on two questions. Schad, 501 U.S. at 630-32. The first inquiry is legislative intent: Did the legislature intend to establish separate offenses for which unanimity is required or different means of violating a single offense for which unanimity is not required. Schad, 501 U.S. at 630-31; United States v. Edmonds, 80 F.3d 810, 815 (3d Cir. 1996). The second inquiry is constitutional: If the legislature intended alternative means to violate a single crime, is the statute's definition of the crime unconstitutional under the due process clause. Schad, 501 U.S. at 632; Edmonds, 80 F.3d at 815.

Due process places some limits "on a State's capacity to define different courses of conduct, or states of mind, as merely alternative means of committing a single offense." Schad, 501 U.S. at 632. But the Court held the decision of the Arizona Legislature to treat premeditated murder and felony murder as alternative means rather

16

than different offenses did not exceed due process limits. Schad, 501 U.S. at 632. The Court emphasized that it has "never suggested that in returning general verdicts . . . the jurors should be required to agree upon a single means of commission." Schad, 501 U.S. at 631. Rather, " 'different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict.' " Schad, 501 U.S. at 631-32 (quoting McKoy v. North Carolina, 494 U.S. 433, 449, 110 S. Ct. 1227, 108 L. Ed. 2d 369 (1990) (Blackmun, J., concurring)).

Richardson is a statutory interpretation case. In Richardson, the Supreme Court addressed a federal statute that required proof of multiple crimes. Richardson, 526 U.S. at 817-18. The Court held that to convict a defendant under the federal continuing criminal enterprise drug statute, 21 U.S.C. § 848(a), a jury must agree unanimously on the specific, underlying drug code violations that comprise the "continuing criminal enterprise." Richardson, 526 U.S. at 815. The Court interpreted 21 U.S.C. § 848(a) to mean Congress intended each violation to be treated as an element of the offense. Richardson, 526 U.S. at 818-19. The Court noted potential unfairness of not requiring such agreement because the term "violation" encompassed approximately 90 predicate drug crimes involving "many different kinds of behavior of varying degrees of seriousness." Richardson, 526 U.S. at 819. But the Court emphasized that juries "need not always decide unanimously which of several possible sets of underlying brute facts

17

make up a particular element" or "which of several possible means the defendant used to commit an element of the crime." Richardson, 526 U.S. at 817.

> Where, for example, an element of robbery is force or the threat of force, some jurors might conclude that the defendant used a knife to create the threat; others might conclude he used a gun. But that disagreement—a disagreement about means—would not matter as long as all 12 jurors unanimously concluded that the Government had proved the necessary related element, namely, that the defendant had threatened force.

Richardson, 526 U.S. at 817.

We hold RCW 9A.36.021 does not violate due process. RCW 9A.36.021 is a single crime offense that defines different ways the offense may be committed.

Mandatory Legal Financial Obligations

Garcia Gomez challenges imposition of the mandatory $500 victim penalty assessment under RCW 7.68.035(1)(a) and the mandatory $100 DNA[13] collection fee under RCW 43.43.7541. Garcia Gomez claims imposition of the victim penalty assessment and the DNA collection fee without consideration of his ability to pay violates due process. We have previously considered and rejected the argument that imposition of mandatory legal financial obligations violates due process. See State v. Lundy, 176 Wn. App. 96, 103, 308 P.3d 755 (2013); State v. Mathers, 193 Wn. App. 913, 918-24, 376 P.3d 1163, review denied, 186 Wn.2d 1015, 380 P.3d 482 (2016); State v. Seward, 196 Wn. App. 579, 585-86, 384 P.3d 620 (2016), review denied, 188 Wn.2d 1015, 396 P.3d 349 (2017).

Statement of Additional Grounds

In his pro se statement of additional grounds, Garcia Gomez argues the court ignored requests to discharge his attorney. The record does not support his argument.

---

[13] Deoxyribonucleic acid.

Contrary to Garcia Gomez's assertion, the trial court did not ignore his letters or requests to discharge his attorney, plead guilty to lesser charges, or be released and placed in drug treatment. The court did not abuse its discretion in denying his requests, including the request to discharge counsel. See State v. Stenson, 132 Wn.2d 668, 733-34, 940 P.2d 1239 (1997).

We affirm the jury convictions of two counts of domestic violence assault of C.G. in the second degree.

WE CONCUR:

_Mann, A.C.J._

_Leach, J._